## The State *vs.* Michael Carey.

Second Judicial District, Norwich, October Term, 1903.
Torrance, C. J., Baldwin, Hamersley, Hall and Prentice, Js.

The practice of instructing a jury that it is unsafe to believe the un-
corroborated testimony of accomplices, arose from conditions
which have in great part ceased to exist; and it is no longer a rule
of law—if indeed it ever was—that such an instruction must be
given to the jury in every criminal case in which an accomplice
testifies. It is the character and interest of the witness as shown
upon the trial, and not merely his participation in the crime
charged, that must determine the discretion of the judge in com-
menting on his credibility.

If, however, the situation demands it, the jury should be cautioned;
and it may be possible that a failure to perform this duty would
furnish ground for a new trial.

Upon the trial of the accused for an assault with intent to procure an
abortion, the woman who was operated upon testified as a witness
for the State. The court charged the jury that she was not tech-
nically an accomplice, but was guilty of a distinct statutory offense,
which might be considered by them as affecting her credibility
and the weight of her testimony; and that the accused ought not
to be convicted unless the evidence was clear, strong and convinc-
ing, and removed every reasonable doubt from their minds as to
his guilt. *Held:*—

1. That the conditions were such that the comments of the trial judge
upon her credibility did not indicate an abuse of discretion and a
clear failure of duty, whether the witness could be strictly re-
garded as an accomplice or not.

2. That the trial court was correct in stating that the woman operated
on was not strictly an accomplice of the accused in the perpetra-
tion of the crime charged against him.

The accused did not actually perform the operation, but employed one
*B* for that purpose. *Held* that no error was committed by the
trial judge in calling the attention of the jury to the statute (§1583)
which permits an accessory to be prosecuted and punished as if he
were the principal offender.

Failure of the trial judge to charge in the language of oral claims made
by the accused, when no written requests to charge are made, is
not properly assignable as error.

On her direct examination the complainant, after giving an account of
the first operation, stated that after *B* had left the room the ac-
cused came in, told her how much the operation had cost him,
locked the door, and against her protest remained with her until

State v. Carey.

twelve o'clock having sexual intercourse with her, and then accompanied her home. Counsel for the accused objected to any evidence of what took place after *B* went out. *Held* that the relations of the parties to each other, which this evidence tended to prove, could not be affected by *B's* presence or absence, and that if the evidence tended to unduly prejudice the accused in the opinion of the jury, as claimed on the argument in this court, it should, in fairness to the trial court, have been objected to upon that ground.
The fact that evidence not strictly admissible, and possibly harmful, has been heard by the jury, can rarely furnish ground for a new trial, unless the evidence came in by reason of some error of the trial court; if no objection is made the court cannot be charged with error, nor can it ordinarily be if the objection is on a specific ground which is correctly ruled to be untenable.
Evidence was received of what took place between the woman and the accused just after the first operation for abortion. *Held* that this was properly admitted to show the relations of the parties.
The accused offered evidence that during the year previous to the first operation by *B*, the woman had herself attempted, or submitted to an attempt, to produce a miscarriage. *Held* that this evidence was properly excluded.
A record of the City Court was offered by the accused to show his acquittal on the charge of seduction, and to fix a date. *Held* that there was no error in its exclusion for the former purpose.

Argued October 21st, 1903—decided January 6th, 1904.

INFORMATION for a felonious assault with intent to procure an abortion, brought to the Superior Court in New London County and tried to the jury before *Roraback, J.;* verdict and judgment of guilty, and appeal by the accused. *No error.*

The information of the State's Attorney charged one Marion W. Beebe and the defendant, Michael Carey, jointly, with an assault on the body of Ida May Lafferty, and with their hands thrusting an instrument into her womb and body, she being pregnant with child, with the intent thereby to procure upon her a miscarriage and abortion, the same not being necessary to save her life or that of her unborn child.

The information contained three counts, charging three offenses; the first as committed on July 16th, 1902, the second on August 1st, and the third on August 20th, of the same year.

At the request of Carey he was accorded a separate trial.

The State claimed to have proved that Carey and said Lafferty were, at the times of the offenses charged, and for some time prior thereto had been, on intimate terms, involving sexual intercourse; that upon Ida's discovering signs of pregnancy, Carey hired said Beebe to operate for abortion, and on July 16th conducted her to a room provided for the purpose, where Beebe performed the operation, Carey watching outside the locked door; that upon discovering further signs of pregnancy, a second operation was performed on August 1st, and a third on August 20th.

The defendant claimed that the State had proved that operations were performed upon Ida, by Beebe, upon the dates mentioned; but claimed that the testimony was insufficient to prove the defendant's connection with the crime.

Beebe and Lafferty were examined as witnesses for the State. The defendant did not testify. It does not appear what, if any, other testimony was produced in support or contradiction of the defendant's connection with the crime.

The defendant was found guilty and sentenced upon each count.

A finding of facts was made by the court (*Roraback, J.*), and the defendant's appeal assigns error in the charge and in the rulings upon evidence.

*William H. Shields* and *Amos A. Browning*, for the appellant (the accused).

*Solomon Lucas*, State's Attorney, for the appellee (the State).

HAMERSLEY, J. The main error assigned in the reasons of appeal is found in the exception to that part of the judge's charge which relates to the credibility of the competent witness, Ida M. Lafferty, who was the victim of the attempted abortion.

In her testimony she admits that moral turpitude belonging to an unmarried woman who, believing herself pregnant, consents to an operation on her body for the purpose of

State v. Carey.

avoiding the consequences which might follow the birth of a bastard child, and that she has committed the statutory crime of attempting to secure her own miscarriage. Her testimony is given under the bias of such interest as is disclosed by the record. In view of this condition and the defendant's claim that her testimony is worthless unless confirmed by independent evidence, the court substantially instructs the jury as follows : — .

The State relies upon the testimony of the witnesses Beebe and Lafferty. Beebe is what is known in law as an accomplice. He admits that he was one of the perpetrators of the crime charged against the defendant. You should act upon the testimony of an accomplice with great caution. As a general rule it is unsafe to convict upon such testimony alone. It ought to be corroborated in material facts connecting the prisoner with the crime. The witness Lafferty cannot, technically speaking, be regarded as an accomplice. She is not a perpetrator of the crime charged against the defendant and cannot be convicted of that crime. But in submitting her person to the operation of Beebe she did commit a distinct crime, created by another statute, which provides for a different penalty, and you may consider her confession of this crime as affecting her credibility and the weight of her testimony. You ought not to convict in this case unless the evidence is clear, strong, and convincing, and removes every reasonable doubt from your minds as to the guilt of the accused.

In the absence of any written requests to charge, and in view of the state of evidence so far as disclosed by the record, we cannot say that the trial court did not fairly and properly exercise its discretion in commenting on the credibility of the witness Lafferty, as well as that of the witness Beebe.

Assuming that the witness Lafferty was an accomplice, the defendant claims that the court had no discretion in commenting on the weight of her testimony; that a practice of English judges in commenting on the testimony of accomplices, followed more or less closely in American courts, has

become in this State substantially a rule of law directing a judge, whenever an accomplice testifies, to advise the jury that it is not safe to convict on his testimony alone; and that any failure to obey this direction is ground for a new trial.

We cannot accede to this claim. When the testimony of accomplices was first used, it was, under the then settled law of evidence, incompetent, and was admitted, notwithstanding, as an exception to that settled law, justified by necessity. The conditions at that time affecting such testimony were mainly these: a convicted felon was an incompetent witness; an accomplice confessed himself guilty of felony; a person having an interest in the event of a prosecution was an incompetent witness; the liberty or death of an accomplice, at first absolutely and afterward more or less directly, might depend on the event of the prosecution in which he testified; the necessity of punishing certain crimes induced the enactment of statutes offering bribes to perpetrators of these crimes who, confessing their commission, might charge the crime upon their associates or furnish the government with evidence that would lead to the arrest and conviction of others. Thus grew up the law of approvement. Under certain circumstances a person arrested and indicted for felony might confess his crime in open court, and appeal others, his accomplices, in its commission. If the court allowed the appeal, the appellees were arrested and tried, and if convicted the accusing accomplice had his liberty, and if not convicted he was hanged. The law of approvement was in force at the close of the eighteenth century, although long obsolete.

In analogy to this law, grew up the practice of admitting persons indicted for crimes as king's evidence, under an implied assurance of immunity from punishment for the crimes confessed by them. *Rex* v. *Rudd*, 1 Cowper, 331, 334; 1 Hale's Pl. Cr. 303; Hawkins' Pl. Cr. Bk. 2, Chap. 24, Chap. 37, § 7, Chap. 46. Hawkins defines an accomplice as one who is "an accomplice in the crime charged against the prisoner." Lord Mansfield defines an accomplice, in giving the main reason why his testimony is untrustworthy:

" They (accomplices) are clearly competent witnesses; their single testimony alone is seldom of sufficient weight with a jury to convict the offenders; it being so strong a temptation to a man to commit perjury, if by accusing another he can escape himself." *Rex* v. *Rudd*, 1 Cowper, 331, 336.

The statutes encouraging informers to buy immunity in crime by accusing others, produced accomplices, as witnesses, in the most odious possible light; the danger of their testimony was enhanced by the condition of the law, which excluded an accused person from the witness-stand. The most reputable persons in the realm might be convicted of crime because they could not be heard in contradiction or explanation of accusations by the most infamous. Instances of such cruel injustice were not wanting in times of high political excitement. Notwithstanding an accomplice was thus admitted as a witness only as an exception to the settled law governing competency, he was nevertheless a competent witness. The weight and credibility of his testimony was subject to the settled rules and regulations of law affecting that of any competent witness. The jury might give him full credit and convict on his testimony alone. The court in commenting on the weight of his testimony had the same discretion exercised in respect to every competent witness. This law was affirmed by the twelve judges in 1788, and was unquestioned. *Rex* v. *Atwood*, 1 Leach C. C. 464; *Rex* v. *Jones*, 2 Campb. 131, 132; *Rex* v. *Hastings*, 7 C. & P. 152.

It was under these conditions and in respect to witnesses known as accomplices, thus defined, that during the latter part of the eighteenth and the earlier part of the nineteenth centuries the statements of English judges, in respect to their own practice in dealing with such witnesses, was made. The undoubted practice of sharply, and often indignantly, denouncing the worthlessness of the unconfirmed testimony of a witness who acknowledged himself a knave and that he was testifying against his comrades in the hope of obtaining by this means a pardon for his own crimes, was natural, lawful and just. And the form, force, and extent of such

denunciation was wholly discretionary with the judge, according to the circumstances surrounding each witness.

The practice, so far as it was a general practice, of denouncing accomplices as *per se* witnesses whose unconfirmed testimony it was unsafe to believe, arose from the conditions we have mentioned. Those conditions no longer exist.

An accomplice as a witness is no longer admitted as an exception to the general law of competency, authorized on grounds of public necessity. A convicted felon is not an incompetent witness. A person interested in the event of a prosecution, however great his interest, is not incompetent. The peculiar statutes that bred the approvers or informers of former times have no place in our legislation. Arrangements for king's evidence or State's evidence cannot be initiated by the informer himself, or a private prosecutor, but are confined to an officer of the court appointed by the court. The accused is no longer excluded from the witness-stand. He is free to defend himself from unjust accusation. The general law of competency places accomplices on the same footing as other witnesses ; the same rules apply to the weight and credibility of their testimony.

There is no longer any excuse for speaking of accomplices as an exceptional class of witnesses, incompetent on general principles, and unfortunately admitted under the stress of public necessity. It is not true that every accomplice, even if the meaning of the word is strictly limited to the " king's evidence " of former times, acknowledges a moral turpitude, ordinarily inconsistent with veracity, or testifies under the compulsion of an irresistible self-interest. It is true that moral turpitude, whether shown by confession, or conviction of crime, or otherwise, and self-interest, however great, does not affect the competency of any witness. It is true, as it always has been, that when a competent witness is shown in the course of a trial to have exhibited moral turpitude of a nature ordinarily inconsistent with veracity, or to have such an interest in giving his testimony as to render the temptation to perjury peculiarly powerful, it is the right of the court in the exercise of its discretion, and may be its

State v. Carey.

clear duty, to call the attention of the jury in the strongest terms to the danger of giving credit to such testimony, unconfirmed by independent evidence. And where such duty is neglected to the manifest injury of the accused, such neglect may furnish sufficient ground for a new trial. We think this view of the discretion of a trial judge, and of his duty in commenting on the credibility of witnesses, is fully sustained by our former decisions. *State* v. *Wolcott*, 21 Conn. 271, 281; *State* v. *Stebbins*, 29 id. 463, 473; *State* v. *Williamson*, 42 id. 261, 264; *State* v. *Maney*, 54 id. 178, 193.

It is difficult to affirm just what was the practice of our trial courts, in commenting on the testimony of accomplices, prior to 1851, when it was first brought to the attention of this court. For quite a period prior to 1807, the loose and unjustifiable practice prevailed of giving the jury a mere resumé of the testimony produced, and of the arguments and claims of counsel, with no expression of opinion upon the law, and no comment on the weight of evidence. Apparently the courts subsqeuently exercised a reasonable discretion, when the testimony of an accomplice called for special comment, and the existence of such discretion, and the nature of the law upon which it rests, is laid down in *State* v. *Wolcott*, 21 Conn. 271. The doctrine of this case, affirmed in the subsequent cases, is inconsistent with the existence of a rule of law binding the judge, whenever an accomplice testifies, to instruct the jury that it is not safe to convict on his testimony alone. We think there is no such rule of law for the reasons above given.

It is the character and interest of the witness, as shown upon the trial, and not the mere fact of his being an accomplice, that must determine the discretion of the judge in commenting on his credibility. The conditions of character and interest most inconsistent with a credible witness, very frequently, but not always, attend an accomplice when he testifies. When those conditions exist, it is the duty of the judge to specially caution the jury, and, as we said in *State* v. *Stebbins*, 29 Conn. 463, it may be possible that a failure of duty in this respect may be so marked, and may

so clearly and injuriously deprive the accused of that judicial control over a trial by jury to which he is entitled, as to furnish ground for a new trial.

In the present case, as we have said, the conditions of moral turpitude and overpowering interest attaching to the witness Lafferty were not such that the comments of the court on her credibility indicate an abuse of discretion and a clear failure of duty, whether the relation of the witness to the accused can be strictly regarded as that of an accomplice or not.

The court did not err in saying that the witness Lafferty was not, strictly speaking, an accomplice of the accused in the perpetration of the crime charged against him. She could not be prosecuted and punished for that crime. There is nothing in the record that justifies the affirmation that she testified under the inducement of any promise, express or implied, of immunity from prosecution for the distinct crime she had committed. She is far from coming strictly within the meaning of "accomplice" as used by Hale, Hawkins, Buller, Mansfield and all the earlier judges, in referring to the witness whose participation in the crime charged almost of necessity involved that turpitude and interest which destroyed his credibility.

The theory of the defense is that the crime of the accused involved an operation on the body of the witness; that this operation could be more conveniently performed with her assent; that in giving assent she assisted him in the operation, and was therefore a joint perpetrator with him of the crime. The conclusion does not follow.

Ordinarily a man may injure his own body by his own hand, or the hand of an agent, without himself violating the criminal law. And the person who injures his body with such assent may commit a crime of which the injured party is not guilty. A murderer cannot justify himself by proving the assent of his victim. Non-interference with a man's control of his person is not extended to the disposition of his life; but taking his own life is a thing distinct from the crime of murder.

State *v.* Carey.

If a man in a moment of weakness should assent to the opening of a vein by another, for the purpose of taking his life, and, when in the immediate expectation of death, make a statement of the facts attending the assault, it would hardly be claimed, upon trial of his assailant for felonious killing, that the dying declaration must be received with all the infirmities attending the testimony of an accomplice in the crime. This distinction between a man's injuring his own body himself, or through assent to such injury from another, and the crime that may be committed by another in inflicting such injury, has been strongly drawn in crimes akin to the one under discussion.

At common law an operation on the body of a woman quick with child, with intent thereby to cause her miscarriage, was an indictable offense, but it was not an offense in her to so treat her own body, or to assent to such treatment from another; and the aid she might give to the offender, in the physical performance of the operation, did not make her an accomplice in his crime. The practical assistance she might thus give to the perpetrator, did not involve her in the perpetration of his crime. It was in truth a crime which, in the nature of things, she could not commit. And so it has been held, under various statutory forms of this offense, that the victim of an attempted abortion could not be an accomplice in a crime which consisted in an operation on her body, with or without her consent, by another person with intent to produce abortion. *Commonwealth* v. *Wood*, 11 Gray, 85, 93; *Commonwealth* v. *Boynton*, 116 Mass. 343, 345; *Commonwealth* v. *Follansbee*, 155 id. 274, 277; *State* v. *Hyer*, 39 N. J. L. 598.

Whether an attempt to produce an abortion on a woman quick with child was indictable under the common law of this State or not, it was made an offense by the Statutes of 1821, p. 152. It was limited to attempts at abortion through administration of drugs, and was classed with attempts to murder by poison. Subsequently it was made an entirely distinct offense, and extended to attempts at miscarriage through the employment of any instruments for physical

operation. Compilation of 1854, p. 307. Under this law the victim of the attempted abortion was not, and could not be, an accomplice in the crime. The law was probably repealed in 1860. At all events it was not retained in the Revision of 1866. In 1860 the legislature enacted the statute now contained in § 1155 of the General Statutes. It differed from the former statute only in omitting the limitation that the subject of the attempted abortion must be quick with child, and in the extent of punishment. It is evident that the crime thus created does not differ from that defined by the former statute and by the ancient common law, in the relation of the woman who is the subject of the crime to its perpetrator. He is equally guilty, whether the woman assent or does not assent to this use of her person, and any assistance he may have in performing the physical operation through her assent is not, in the meaning of the law, assistance from her in the perpetration of his crime, and does not make her an accomplice in that crime.

This view is strengthened rather than weakened by the fact that the legislature at the same time, for the purpose of further promoting the public policy which regards all unnecessary miscarriage as a public evil, created two new and distinct offenses, now contained in §§ 1156 and 1157 of the General Statutes, one limiting the power of a woman over her own person and punishing an attempt to produce unnecessary miscarriage—whether through the use of her own hands or those of an agent,—and the other punishing every person who, by publication or otherwise, encourages the commission of either of the above-mentioned crimes.

The offense created in thus limiting the power of a woman to injure her own person is, in form, purpose and punishment, clearly distinct from that crime committed by another, who inflicts an injury on her person in violation of law.

The public policy which underlies this legislation is based largely on protection due to the woman, protection against her own weakness as well as the criminal lust and greed of others. The criminal intent and moral turpitude involved in the

State *v.* Carey.

violation, by a woman, of the restraint put upon her control over her own person, is widely different from that which attends the man who, in clear violation of law and for pay or gain of any kind, inflicts an injury on the body of a woman, endangering health and perhaps life.

The information charges the defendant, jointly with Beebe, with thrusting an instrument up and into the womb and body of Ida M. Lafferty, with intent thereby to cause her miscarriage. The evidence tended to prove that Beebe used the instrument, and that the defendant hired him to do so, arranged for the time and place of the operation, and in other ways assisted in the perpetration of the crime. The court did not err in calling the attention of the jury to §1583 of the General Statutes, which provides that an accessory may be prosecuted and punished as if he were the principal offender, and the defendant has no reason to complain of that part of the charge relating to this subject.

Failure of the judge to charge in the language of oral claims made by the defendant, when no written requests to charge are made, is not properly assignable as error; but we have considered claims of this kind, specified in the finding, as bearing upon the fairness and adequacy of the charge as given.

The objections to the rulings upon evidence do not furnish sufficient ground for a new trial. Evidence of what took place at the time of the operations by Beebe, in the absence of the defendant, in view of the other evidence tending to prove the relation between Beebe and the defendant in the preparations for and commission of the crime, was properly admitted. Even if the scraps of conversation that crept into the account of what was done could be regarded as by themselves objectionable, they could not, in view of the other testimony, have injured the accused.

The relations between the defendant and Ida M. Lafferty, especially in the matter of sexual intercourse prior to the first offense charged and during the time intervening between the first and third offenses, were relevant as tending to show a motive for the defendant's employment of Beebe

in the commission of the crime. Such evidence was admitted without objection.

During her examination in chief Ida M. Lafferty, having given an account of the first operation by Beebe, on July 16th, said that after Beebe left the room, Mike (the defendant) came back and told her what it had cost him; that she started to put on her hat to go home, but he insisted on her staying, and locked the door and kept her there till twelve o'clock. Counsel for the accused objected to this, saying, "Beebe has gone." The court admitted it as showing the relations of the parties. She then said that they had sexual intercourse, and after that he went home with her.

There was no objection to the admission of this testimony, except on the ground that Beebe had left the room. The court correctly ruled that the admissibility of what took place between the defendant and the witness, for the purpose of showing their relations to each other, could not be affected by the presence or absence of Beebe.

In argument, defendant's counsel urge that this testimony, even if remotely relevant, was unnecessarily prejudicial to the accused. Whether or not the unfavorable opinion of the prisoner's character the jury might form from the whole story of his relations with the witness Lafferty, was materially increased by the narration of this particular instance of sexual intercourse, can hardly be affirmed with certainty, but no objection was taken on this ground. The objection did not at the trial occur to the court, and if it occurred to the prisoner's counsel, it was withheld from the court. When testimony not strictly admissible, and possibly harmful, has been heard by the jury, that fact can rarely be ground for a new trial, unless the testimony went to the jury by reason of some error of the court. If such testimony is not objected to, the court commits no error, nor can it ordinarily be charged with error, when the testimony is objected to on a single specific ground, upon which the court correctly rules. The record does not sufficiently show that the question of the admissibility of this testimony, which we are now asked to decide, was presented to the trial court by any

proper objection, or that the court decided, or even had its attention directed to, the question. We cannot charge the court with error in not acting rightly upon a question which it has had no opportunity to consider.

The evidence offered by the defendant for the purpose of proving that during the year previous to the first operation by Beebe, Ida had herself attempted, or submitted to an attempt, to produce miscarriage, was properly excluded.

The defendant offered in evidence a record of the City Court of Norwich, claiming it would show an acquittal of defendant on the charge of seduction, and that he wanted to fix a date by it. The court admitted the evidence for the purpose of fixing a date, but not for the purpose of showing an acquittal on a charge of seduction. There was no error in this.

An exception taken to remarks of the State's Attorney in his argument to the jury is without merit and was not pressed in argument.

There is no error in the judgment of the Superior Court.

In this opinion the other judges concurred.