THE STATE OF CONNECTICUT *vs.* JOSEPH CIANFLONE AND MIKE RUGIERO.

First Judicial District, Hartford, January Term, 1923.
WHEELER, C. J., BEACH, CURTIS, BURPEE and KEELER, JS.

In a prosecution for murder, the State offered evidence to show a deliberate and premeditated homicide. The accused offered the defense of an *alibi*. *Held* that since the evidence was conflicting, manifestly it could not be held as matter of law that the verdict of guilty in the second degree should be set aside.

Where an accused is known by an *alias*, the State has the right to so designate him in the indictment.

Since proof that an accused is an accessory before the fact, will support a charge against him directly as a principal, there is no objection to the joinder of a count charging two accused as principals with a count charging one as principal and one as accessory; and no abuse of discretion by the court is shown merely by its refusal to require the State to elect upon which count to proceed.

The court may in its discretion deny a motion for a change of venue where no evidence is offered in support of the motion and no reasons are given except the statement of counsel that the case has had considerable publicity.

It is not error for the court to deny motions by the two accused for separate trials, where the court has before it no facts showing that the defenses of the accused would be antagonistic, and no claim that the State would offer confessions or admissions of one accused which might prejudice the other; and the ruling is not affected by the later offer by the State of a claimed confession of one of the accused, since their counsel could by inquiry of the State's

The State *v.* Cianflone.

Attorney have ascertained at the time of making the motion that the State proposed to make such offer.

Upon a motion for separate trials it is always the duty of the State's Attorney to apprise the court of his intention to offer confessions or admissions as to one of the accused and not the other.

The action of the court in twice returning the jury for consideration of the case after they had reported their inability to agree, once after a deliberation of six hours, and again after a deliberation of three hours, is within the statutory power of the court and not only proper but in the present case was wise and eminently necessary in securing a verdict after a lengthy trial.

Where there are no facts in evidence which would reduce a crime from murder to manslaughter, the court may properly remove any issue of manslaughter from the consideration of the jury.

A request that the jury be cautioned as to accepting the testimony of an accomplice is improper, since—unless the facts as to the character of the witness are admitted—such caution must be contingent upon a finding by the jury that the witness is an accomplice; and also—since under our law an accomplice stands before the court as does any other witness—upon a finding that the witness exhibited moral turpitude of a nature ordinarily inconsistent with veracity, or had such an interest in giving his testimony as to render the temptation to perjury peculiarly powerful.

While the State is not bound to show a motive for the commission of a crime charged, evidence as to motive is pertinent in so far as it tends to furnish evidence indicative of guilt or the reverse.

An *alibi*, though commonly called a defense, is, strictly speaking, merely rebuttal of the State's evidence.

In this State the trial judge may discuss and comment on the evidence to the jury, may express his opinion as to its weight or as to what verdict would be proper if certain facts are found to have been proved, and may direct attention to considerations affecting the credibility of testimony; and so long as he has acted fairly he has committed no abuse of discretion.

In like manner the judge may ask questions of a witness, and so long as he acts fairly, without bias or prejudice, and, even though suggesting his opinion of the credibility of the witness, yet leaves that question open to the jury, his discretion will not be reviewed.

In such acts the judge must exercise great care not to become the advocate, and must keep before him the single purpose of ascertaining the truth and helping to see that justice is done.

The judge is not a mere moderator or umpire or presiding officer. The trial is not a game conducted to exhibit the prowess of counsel, but a judicial inquiry to determine what the true facts in controversy are, and then to render upon these facts the judgment of the law.

Argued January 2d—decided March 1st, 1923.

INDICTMENT for murder in the first degree, brought to the Superior Court in Hartford County and tried to the jury before *Wolfe, J.;* verdict and judgment of guilty of murder in the second degree, and appeal by each of the accused. *No error.*

*Henry J. Calnen,* for the appellant (the accused Rugiero).

*Gustaf B. Carlson* and *Nathan O. Freedman,* for the appellant (the accused Cianflone).

*Hugh M. Alcorn,* State's Attorney, and *Reinhart L. Gideon,* Assistant State's Attorney, for the appellee (the State).

WHEELER, C. J. The first appeal is from the denial of the motion of the accused to set aside the verdict. We shall dispose of this appeal before taking up the additional appeal which concerns interlocutory rulings, exceptions to the charge, and rulings upon evidence.

Examination of the evidence shows that the State offered evidence to prove the following facts: During the summer of 1920, the accused, with six others, including two brothers and a brother-in-law of the accused Joseph Cianflone, were associated in the unlawful transportation and sale of intoxicating liquors and were accustomed to meet in New Britain in the store of John Cianflone, brother of the accused Joseph Cianflone. In August, 1920, eight barrels of alcohol were brought from New York to New Britain by or for some or all of the members so associated, and there secreted. Three of the barrels were stolen, and the theft almost immediately reported to several of the members who were in the store of John Cianflone, including the accused Joseph, who then said in an angry

manner: "I would like to find out who took that liquor, and that the fellow that did steal it ought to get punished."

Between this date and November 2d, 1920, the accused were frequently together in New Britain and elsewhere; Joseph was in New Britain on October 23d and 24th, and in the vicinity of Farmington and New Britain until after eleven o'clock on the night of October 25th. About ten o'clock in the morning of October 25th, the day of the homicide, the accused left New Britain in a Cadillac touring-car driven by Joseph, bound for Hartford Reservoir No. 4 in Farmington. Pursuant to previous arrangement to drive the accused to a place outside of New Britain where they said they had an appointment concerning a liquor transaction, Crapanese met the accused in New Britain and drove them to the reservoir at a lonely spot, reaching the place about eleven o'clock, where they had previously arranged to meet Renaldino. The accused instructed Crapanese to keep the car in second gear. When Renaldino appeared, the accused got out of their car and talked with him about some whiskey. Renaldino said he had about $900 with him and would give them the rest tomorrow. The accused Joseph said: "Get in your car and we will show you." Renaldino turned to get in his car and Rugiero pinioned both his arms holding him securely. Joseph searched his pockets and took out a large roll of bills and a revolver. When Renaldino called for help, Joseph tied a handkerchief about his mouth tightly and at the same time dealt him a powerful blow on the jaw. Then Joseph put the pistol to Renaldino's ear and said: "I'll show you that you won't steal any more whiskey from anybody else," and fired, killing him instantly. After the shooting Joseph placed the stock of the revolver in Renaldino's right hand and the muzzle

of it in his upturned left hand, while both hands remained under the driving wheel. The revolver could not have been placed in this position by Renaldino after the shot was fired. Joseph then took from his own pocket a grocery store order book on the front page of which was written in Italian as translated: "26 Franklin Street. Macini heard I had $2,000. They murdered me. They made me suffer. What suffering. Lily, goodbye." The "Lily" named was the wife of Renaldino. Then Joseph took a small lead pencil from Renaldino's pocket and placed the book and pencil on the side of Renaldino's body and scattered some money and change around and in the roadway to give the appearance of suicide as well as murder. Renaldino was found in about an hour after he was shot. Joseph told Crapanese as they were leaving, to keep his mouth shut or they would do the same thing to him, and on their return to New Britain he offered Crapanese a sum of money for his services in driving the car, which he refused to take. Later in the afternoon Crapanese and Joseph were seen in conversation in New Britain, and at that time Joseph told Crapanese that he had killed Renaldino because he had stolen the alcohol referred to. Crapanese was friendly with both accused and had worked for the Cianflone brothers during most of the summer of 1920, his work consisting chiefly in driving motor-vehicles transporting liquor for them and others. Crapanese remained in New Britain until about Christmas. Joseph left New Britain in November, and up to that time he and Rugiero were together at various times. In March, 1921, Crapanese came from his home in Brooklyn to New Britain, and when there Joseph charged him with having said something which might implicate him in Renaldino's killing, and at the same time slashed him across the left cheek with a razor.

Crapanese was taken into custody as a material witness in September, 1921, and held as such down to the trial. Except as stated, Crapanese had no knowledge of the real purpose for which the accused met Renaldino, and had no knowledge that a homicide was to be committed. The State claimed that the shooting was done with malice aforethought, wilfully, deliberately and premeditatedly, and that the accused Rugiero actively aided, abetted and assisted the accused Joseph Cianflone in the homicide both before and at the time of the homicide, and that the accused met Renaldino with the deliberate purpose and intent of killing him, and that the offer to sell whiskey to Renaldino was a mere pretext to lure him to the selected spot.

The accused offered evidence to prove that they were not in the State at the time of this homicide; that Joseph had no interest in the three barrels of alcohol which the State claimed were stolen, and that neither of them believed or had reason to believe that Renaldino had stolen this alcohol, and never had business relations with him and knew him but slightly and had no reason to take his life; that neither accused saw or talked with Crapanese on October 23d or October 24th, and made no arrangements with him to go in an automobile on October 25th; that Rugiero did not in October own a Cadillac car, and that neither accused used on October 25th such car, and that the accused had no motive for killing Renaldino and did not kill him and were not present when he met his death.

The evidence was conflicting; in such a case manifestly we cannot hold as matter of law that the verdict should have been set aside. Moreover, our consideration of the evidence has led us to the conclusion that the jury were amply justified in reaching the conclusion

they did, and that had they found the accused guilty as charged, their verdict could not have been set aside as contrary to the evidence.

The appeal from the denial of the motion to set aside the verdict should never have been taken, as it required the printing of over five hundred pages of the evidence, and any careful examination and comparison of the evidence would have led irresistibly to the conclusion that the appeal upon such a ground must prove fruitless.

We pass to the additional appeal and take up first the interlocutory rulings. Cianflone moved to expunge from the indictment the alias of "The Cowboy" following his name. The accused was known by this name and the State had the right to designate him by the alias under which he was known. *Viberg* v. *State*, 138 Ala. 100, 35 So. 53.

Rugiero, by his motion to expunge and for a more specific statement, sought to attack the right of the State to charge the two accused in one count of the indictment as principals, and in another count to charge one of these accused as an accessory. The motion was properly denied. In *State* v. *Hamlin*, 47 Conn. 95, 120, we said: "In this State it is not necessary . . . to state in an indictment against an accessory the acts which show that he aided and abetted the crime, and thus became in law a principal; but it is sufficient to charge him directly as a principal, and proof that he was an accessory before the fact will support the charge. There is no objection, however, to the joinder of a count charging two or more parties as principals with a count charging one or more of the same parties as principals and the others as accessories before the fact, as the proof required to support the latter count will also be sufficient to support the former." *State* v. *Burns*, 82 Conn. 213, 218, 72 Atl. 1083.

The accused also moved that the State be required to elect upon which count of the indictment it should proceed against them. The motion was denied, and since the court exercised its discretion its decision cannot be revised upon appeal unless it plainly appears that injustice has been done, and there is no indication of this upon the record. *State* v. *Tuller*, 34 Conn. 280, 298.

Before the jury was impaneled, counsel for both accused moved for a change of venue. No evidence was offered in support of the motion and no reasons given except the statement of counsel that the case had had considerable publicity. The court denied the motion. The ruling must stand, since it was within the court's discretion and the facts do not disclose that the court exercised that discretion unreasonably. 3 Wharton's Criminal Procedure (10th Ed.) § 1537.

Before the jury was impaneled counsel for both accused moved for separate trials. No claim was then made that the State would offer any confessions or admissions by either of the accused which might prejudice the other during the trial; and no reasons were advanced by counsel other than that the defenses might be inconsistent. So far as the record goes the court did not at that time have before it facts which showed that the defenses of the accused would be antagonistic. Its denial of the motion was not contrary to our rule. "A separate trial of two or more accused upon a joint indictment will be ordered where the defenses are antagonistic, or where evidence will be introduced against one which will not be admissible against others, and it clearly appears that a joint trial will probably be prejudicial to the rights of one or more of them." *State* v. *Klein*, 97 Conn. 321, 116 Atl. 596.

The fact that subsequently in the course of the

trial the State introduced a claimed confession of Rugiero, does not affect the ruling made, since when made the prospective offer of this confession was not known to the court. Counsel for the accused could upon request of the State's Attorney have ascertained that he purposed offering a confession as to one of the accused. Upon a motion for separate trials it is always the duty of the State's Attorney to apprise the court of his intention to offer confession or admissions as to one of the accused and not the other.

The accused assign as error the failure to dismiss the jury after the court had been twice notified by the foreman that the jury could not agree. General Statutes, § 5788, gives the trial court discretionary power to return a jury for reconsideration twice. Unless the court abuses its discretion in holding a jury an unreasonable time for such reconsideration, its decision is final. In this case the jury reported after the case had been submitted to them for six hours their inability to agree. The court directed the jury to reconsider the case and thereafter in three hours, at 12:30 a. m., they reported their inability to agree, and the court a second time directed a reconsideration. Thereafter the jury, at 10:30 the next morning, rendered their verdict. The course taken was no abuse of discretion on the part of the trial court; on the contrary, its course was wise and eminently necessary, for due to its persistence and patience, a verdict was finally reached in this important and lengthy trial.

Errors assigned on rulings on evidence are not pursued except 23, 24 and 31, and these relate to the claimed error in refusing to strike out evidence which had been admitted upon its being subsequently connected with the accused, as tending to show a motive for the crime that Cianflone knew or believed that Renaldino had stolen the three barrels of alcohol. The

admission of this evidence, subject to its future connection with the accused, was within the discretion of the court. The court properly denied the motion to strike out, since there was sufficient evidence upon the question of connection to make its final determination one for the jury.

Error is predicated on the 13th and 14th assignments, upon the failure of the court to specifically charge upon the subject of manslaughter. The court defined manslaughter in order to place before the jury the true difference between murder and manslaughter, and so give the jury an accurate conception of what murder in the law was. The court then proceeded: "It is not necessary, however, in this case for me to enter into more detail as to what might constitute a legal justification or excuse for a homicide; or under what circumstances the crime of homicide would be reduced to that of manslaughter, for no claim of either character has been made in behalf of the accused; nor are there present in the case any elements which would call for any further references thereto by the court." The court was clearly right in its statement that there were no facts present which would reduce the crime to manslaughter, and it was not only not error not to have amplified its charge as to manslaughter, but its duty to remove, as it did, this issue from the consideration of the jury. *State* v. *Marx*, 78 Conn. 18, 23, 60 Atl. 690; *State* v. *McGuire*, 84 Conn. 470, 485, 80 Atl. 761; *State* v. *Smith*, 49 Conn. 376, 388. This obligation was fortified by the fact that counsel for the accused made no claim that upon the facts the homicide might be reduced to manslaughter.

The accused claim that the court erred in failing to charge in accordance with their 9th assignment of error, as to the testimony of Crapanese, the principal witness for the State, that he was an accomplice, and

that while the rule no longer requires that the testimony of an accomplice should in all cases be corroborated, it does require that where an accomplice has assumed to testify as to the circumstances in the case the jury should look with particular care upon the testimony and in many cases it would be unsafe to rely upon it unless it was corroborated.

Our law has been determinatively stated in *State* v. *Carey,* 76 Conn. 342, 348, 56 Atl. 632, which holds that the accomplice stands before the court as does any other witness, and when he or any other witness has "exhibited moral turpitude of a nature ordinarily inconsistent with veracity, or to have such an interest in giving his testimony as to render the temptation to perjury peculiarly powerful, it is the right of the court in the exercise of its discretion, and may be its clear duty, to call the attention of the jury in the strongest terms to the danger of giving credit to such testimony, unconfirmed by independent evidence." Before it becomes the duty of the trial court to specially caution the jury, it must be an admitted fact that the witness is an accomplice, or the caution must be based upon such a finding by the jury. Further, such condition of moral turpitude or of self-interest as we have described must either be admitted, or the caution made contingent upon such a finding by the jury. This request to charge did not in any particular conform to the requirements stated in *State* v. *Carey, supra,* and this is an all sufficient reason for its disregard by the court. But if the court had been requested to charge in accordance with *State* v. *Carey, supra,* we could not upon this record, say as matter of law, that the conditions present would have justified the court in submitting to the jury the fact as to whether Craponese was an accomplice.

Under the circumstances before the court the charge

as made upon this subject was adequate: "In considering and weighing the testimony of the State's witness Crapanese, the claimed eye-witness of the homicide, you will test it by those rules of probability or improbability by which human conduct and the motives impelling or influencing men to do certain things are usually applied. You may consider his appearance and demeanor as a witness, the reasons given actuating him in telling his story to the State authorities, and among these tests, to consider whether any motive has appeared or any reason is apparent why he should seek to fasten so grave a crime upon these accused, if his story is untrue, for the presence or absence of a motive is often an important matter to consider in a determination of the truth or falsity of a story."

The accused claimed error in the failure of the court to charge as requested and as stated in the 10th assignment of error, and claimed from this that the court failed to sufficiently charge the jury upon the purpose for which the transportation of the liquor had been introduced. We think this sufficiently appears in the court's statement of the claims of the parties and again specifically in the charge. We do not deem it of sufficient importance to quote these passages.

In this connection the accused claim that the failure of the court to charge as requested, as found in paragraphs 11 and 12 of the appeal, was erroneous, since the charge did not adequately present the question of motive. We find the charge upon this subject to have been correct and sufficiently full. The court said in part: "The State, however, is under no obligation to show a motive for the commission of the crime charged, much less a sufficient or adequate one. . . . Recognizing the fact that crimes are generally committed from some motive, evidence tending to show the

existence or nonexistence of such motive is held to be admissible and often forms an important factor in the inquiry as to the guilt or innocence of an accused. For the purpose of this evidential inquiry the sufficiency of the motive is most pertinent. It is pertinent, however, only in so far as it tends to furnish evidence indicative of guilt or the reverse, to be considered and weighed in connection with the other evidence in the case."

The accused further claims that in failing to charge as stated in paragraphs 11 and 12 of the appeal, the court did not properly present the case of the State against Rugiero, or the claim of immunity made by him. We find this claim refuted in the charge. In fact the instruction that "if Rugiero was ignorant of the fact that the purpose of Cianflone was to kill Renaldino, and only accompanied Cianflone and held Renaldino for a purpose other than that of killing him, he would be guilty of no crime within the range of this indictment," was more favorable to the accused than he was entitled to. For example, if Rugiero held Renaldino in furtherance of the plan to rob him and the accused Cianflone shot him while carrying out the plan, Rugiero would have been equally guilty with Cianflone of murder.

The court charged as to the defense of an alibi in part as follows: "Now, gentlemen, I need hardly say to you that an effective alibi is a perfect defense, and that all effort to make it effective is entitled to the same serious and earnest consideration upon the evidence that you are expected to give to any other material element of the case involved.

"The defense of an alibi stands upon the same footing as any other defense which the law recognizes as a legitimate one. The fact that it may sometimes, as has been said, be the last desperate resort of the guilty, and may be easily concocted, does not in the least

affect its essential character, for it must also often be the first and only refuge of the innocent."

The second paragraph is made the subject of the 17th assignment of error. The instruction follows the customary charge as to the defense of alibi in this jurisdiction. While an alibi is commonly called a defense, strictly speaking it is merely rebuttal of the State's evidence. *State* v. *Brauneis*, 84 Conn. 222, 231, 79 Atl. 70. No prejudice to the accused from this charge appears in the record. The real objection of counsel is that the defense of alibi was discredited by the observations of the trial court in the course of the trial. We cannot determine this, since these alleged comments do not appear in the finding or in the appeal.

The additional reason of appeal which we permitted to be filed, claims error in the conduct of the court in its examination of witnesses. The trial court in this jurisdiction has very much more latitude in its control over jury trials than in many of our States. It may discuss and comment on the evidence to the jury, indicate its own view-point, express an opinion as to its weight or as to what verdict would be proper if the jury should find certain facts to have been proved, and it may call the attention of the jury to considerations affecting the credibility of testimony. *Banks* v. *Connecticut Ry. & Ltg. Co.*, 79 Conn. 116, 122, 64 Atl. 14. "It is competent, in all cases," we say in *First Baptist Church* v. *Rouse*, 21 Conn. 160, 167, "and in many highly expedient, for the court, not only to discuss, but to express its opinion upon, the weight of the evidence, without however, directing the jury how to find the facts." General Statutes, § 5785, provides that the court may submit the case to the jury "with such observations on the evidence . . . as it may think proper, without any direction how they shall find the facts." All this the court may do so long as

it is done fairly. We permit such control over the
course of the trial because experience has satisfied us
that it is essential in order to ascertain the truth and
secure verdicts which express truth and do justice.

To the same end and for the same reason we permit
the trial court to ask a question or repeated questions
of a witness. The judge must be in a position to com-
ment upon the facts fully and intelligibly to the jury.
He must be able to accurately determine whether a
verdict should be directed, or if rendered whether it
should be set aside. To perform these judicial func-
tions understandingly he must be permitted to ascer-
tain by questioning what the facts are, and to test the
credibility of the witness. Not alone as a help to him
but as a help to the jury, he must be permitted to ques-
tion the witness and place before the jury the facts
in their true relation and to give them the opportunity
to judge of the credibility of the witness. A just ver-
dict is the goal of every jury trial, and not infrequently
the judge by timely questioning aids in the attain-
ment of this desired end. The knowledge that the
judge possesses this power has a salutary influence
upon witness and counsel. The witness may be em-
barrassed, or through lack of knowledge of the language
or understanding of the question may require the
friendly interposition of the trial court. It may be
essential to bring the facts out more clearly, to supply
obvious or necessary omissions, to make that which is
ambiguous plain, to prevent misunderstanding, to
see that the issues are not obscured, or through the
inexperience or want of preparation or forgetfulness of
counsel, that the facts are not developed, or perhaps
counsel may purposely refrain from inquiry for fear
of hurting his side; in all these instances it is the right,
and may be the duty of the trial court, to question
the witness that the truth may appear. The witness

may withhold the truth, be reluctant, or evasive or equivocal or hostile; in such cases the trial court may question the witness to get at the true situation.

The trial judge occupies an impartial position and one of commanding authority, and it often happens in a court-room that he may ascertain the truth when counsel has failed. Whether or not the trial judge shall question a witness is within his sound discretion. The extent of the examination is likewise within his sound discretion. Its exercise will not be reviewed unless he has acted unreasonably, or, as it is more often expressed, abused his discretion. The judge must not exhibit bias or prejudice nor take sides. And he must be careful lest by the manner or extent of the examination, or its hostile and critical character, he indicate to the jury his own prejudice for one side or the other. The judge must never permit himself to become the advocate. While he may indicate to the jury by his questioning his opinion as to the credibility of a witness, he must leave that question open to the jury. And if he shall have expressed or indicated to the jury his belief as to the credibility of a witness, he should in his instructions to the jury make it clear that his opinion was for their consideration but was not binding upon them. So long as he exercises his right to question a witness fairly his discretion will not be reviewed. The difficulty in a protracted examination of separating the judge from the advocate will lead the trial court to refrain from such examination save under exceptional circumstances.

The following are a few of the later cases supporting the rule above stated: *Barlow Bros. Co.* v. *Parsons,* 73 Conn. 696, 706, 49 Atl. 205; *State* v. *Keehn,* 85 Kan. 765, 786, 118 Pac. 851; *Warren* v. *Warren,* 33 R. I. 71, 80 Atl. 593; *State* v. *Spiers,* 103 Iowa, 711, 712, 73 N. W. 343; *King* v. *Commonwealth,* 187 Ky. 782, 220

S. W. 758; *State* v. *Horne*, 171 N. Car. 787, 88 S. E. 433; *State* v. *Sandquist*, 146 Minn. 322, 178 N. W. 884; *Bell* v. *Moloney*, 175 Cal. 366, 165 Pac. 919; *Varnedoe* v. *State*, 75 Ga. 181, 186; *Lockhart* v. *State*, 92 Ind. 452, 454. Our rule is based upon this fundamental principle.

The judge is not a mere moderator or umpire or presiding officer. The trial is not a game conducted to exhibit the prowess of counsel, but a judicial inquiry to determine what the true facts in controversy are, and then to render upon these facts the judgment of the law.

We are not unmindful that in the case at bar a criminal charge is involved of highest consideration, and therefore a peculiar obligation rested upon the trial judge in asking questions of a witness to keep before him the single purpose—the ascertainment of the truth and the helping to see that justice was done.

Tested by this standard we find nothing in the questioning of the trial court which indicated bias or prejudice, or the taking sides on the part of the judge, or the taking control of the case in an unfair manner, or the asking of questions for the mere sake of asking questions; in short, we find nothing which points to an unreasonable exercise of the judicial discretion vested in him.

There is no error.

In this opinion the other judges concurred.