## The State of Connecticut *vs.* Frank Colonese.

First Judicial District, Hartford, October Term, 1928.

Wheeler, C. J., Maltbie, Haines, Hinman and Banks, Js.

Argued October 2d—decided November 7th, 1928.

*Harry L. Edlin,* with whom was *Louis Sperandeo,* for the appellant (the accused).

*J. Howard Roberts,* for the appellee (the State).

HAINES, J. The defendant moved to strike out sixteen paragraphs of the finding and the denial of the motion by the trial court is assigned as error. All these paragraphs were statements of what the State had offered evidence to prove and claimed to have proved.

We have heretofore called attention to the distinction between a finding on a trial to the jury and one where the case was tried to the court. The latter embodies the ultimate facts which have been determined by the court, while the former is merely a fair statement of what the parties offered evidence to prove and claimed to have proved. We also pointed out that there were two methods of obtaining a correction of the latter, one by motion to this court to rectify the appeal and the other, under General Statutes, §§5829, 5830, by motion to the trial court to correct, with exceptions to the finding as made. *Marks* v. *Dorkin,* 104 Conn. 660, 133 Atl. 915.

The appellant in the present case failed to file with his motion the exceptions required by statute, so the questions sought to be raised are not properly before us. Being, however, familiar with the evidence, which is all certified to us, we may say we find nothing therein to justify the changes sought. Nor are such changes necessary in order to fairly present errors claimed to

have been made by the trial court. *State* v. *Gargano,* 99 Conn. 103, 106, 121 Atl. 657.

During the trial the court personally examined at some length one of the defendant's witnesses after the prosecuting attorney had concluded the cross-examination. The defendant excepted to the court's action and it now appears as a ground of appeal, but apparently is not pressed in argument or brief. The examination was clearly within the court's discretion and not unreasonably exercised. *State* v. *Cianflone,* 98 Conn. 454, 468, 120 Atl. 347.

Over the objection of the defendant the court admitted in evidence several of the staves of vats which were found in use in the manufacture. Upon these staves was the name of the defendant in stencil. Defendant conceded that the staves were admissible, but excepted to their admission with the name on them. These staves were properly identified as parts of the vats found on the defendant's premises and in the same condition as when found. It was competent for the State to establish the ownership of the vats and this the staves with the stenciled name tended to do. The objection was without merit. *Ingraham* v. *Chapman,* 177 Mass. 123, 58 N. E. 171; 1 Wigmore on Evidence (1st Ed.) p. 210.

A witness for the State was asked on cross-examination whether one Mauli was living on the defendant's farm; whether he had investigated the question of Mauli's residence; whether Mauli was a tenant of the defendant, and about a conversation with Mauli regarding the still and the farm. Upon redirect examination the witness was asked whether Mauli then told him by whom he was employed, and over the defendant's objection the question was admitted, and the defendant excepted. A similar question was put to this witness regarding one Griffin and this too was

admitted over the defendant's objection. The record of the cross-examination in both instances shows that the basis for these questions was there laid and the ruling of the trial court in both cases was correct.

This witness was asked by counsel for the defendant what house Mauli lived in, to which he replied: "The same house that Colonese is reputed to live in." The defendant moved that this testimony be stricken out on the ground that it was not responsive and that it incriminated the defendant. This motion was properly overruled on both grounds.

The court, in denying this motion, referred to the answer of the witness as not pleasing to the defendant's counsel. Upon protest that the remark was prejudicial to the defendant, the court at once disclaimed any such intention, and so stated clearly to the jury, with the admonition, "You must not allow that passing remark in any way to weigh against the defendant or his counsel." This left the defendant no cause of complaint and his motion for a mistrial on this ground was properly denied.

At the conclusion of the evidence for the State the defendant moved for a directed verdict on the ground that the evidence was insufficient to warrant a verdict for the State and that the two grounds, of manufacture for purpose of sale and keeping with intent to sell, were not distinct offenses, but were merged. Both claims were unsound and the motion was properly denied. There is evidence from which the jury might reasonably have found that liquor had been manufactured before, as well as on, the day of the raid, and that a considerable amount of intoxicating liquor was found in containers in various places on the premises. We may not assume that the State claimed convictions on both counts for the same liquors, and must regard the

two counts as charging separate and distinct offenses. *State* v. *Ryan*, 68 Conn. 512, 515, 516, 37 Atl. 377.

Error is predicated upon each of sixteen separate quotations from the charge. Several of these are cited in support of the claim that the trial court displayed "overzealousness" in favor of the State and a fear that the jury might acquit the accused. We have on more than one occasion criticized the selecting of separate portions of a charge and basing upon them a general contention as to the whole charge. The proposition here advanced is one which should not be lightly made or considered, and we have read the entire charge with careful attention. Thus considered, it is apparent that it is a fair and unbiassed statement of the court's views upon the law as applied to the evidence, and no jury of reasonable men could, we think, have considered it otherwise.

There are three other grounds upon which the defendant claims error in the charge; that relating to the presumption of innocence, to the meaning of "reasonable doubt," and upon circumstantial evidence.

The jury were told: "The presumption of innocence means that when this accused was presented for trial he stood before you free from any prejudice because he was an accused person, so that you are to regard him as innocent unless and until in the orderly progress of the trial you become satisfied of his guilt." The court also explained to the jury that proof of guilt must be established beyond a reasonable doubt. The defendant claims it was error to say: "You are to regard him as innocent unless and until in the orderly progress of the trial you become satisfied of his guilt." It is insisted that the jury "cannot, at any time of the trial, become satisfied of the guilt of the accused, but can only do so after deliberation upon all the evidence and upon the charge of the court." There is no force in this

claim, especially when the charge is read in full. The only effect which the presumption has is to cast the burden of proving guilt upon the State. It imposes no other burden. It is not evidence and its function is exhausted when the State has fully sustained this burden. *State* v. *Smith,* 65 Conn. 283, 285, 31 Atl. 206; *State* v. *Brauneis,* 84 Conn. 222, 229, 79 Atl. 70.

After defining and explaining the term "reasonable doubt," the court added: "The rule should not be a stumbling block in the deliberations of honest men and, while it should be observed as a rule, it should not be used as a means of acquitting a guilty person." The defendant thinks this equivalent to saying that if the jury were satisfied of the guilt, no matter how arrived at, it should so find, notwithstanding the evidence raised a reasonable doubt. A reading of the entire charge disposes effectually of this contention.

It is not easy to understand the position of the defendant on that portion of the charge relating to circumstantial evidence. He says such evidence must be sufficient to exclude every reasonable hypothesis of innocence, which is true. It is also true of direct evidence—as the court made clear—and the jury were told that there was no legal distinction in weight and effect between the two kinds of evidence.

Errors are predicated upon the failure to charge in accordance with five separate requests. The sum total of these requests seems to be that, in order to convict, the jury must find that the defendant participated in the production or profits of the manufacture on the premises owned and controlled by him; that the mere location of the still on the defendant's premises was not sufficient, and that the knowledge of the defendant that a still was being operated on his premises by another and without any participation in the operation

or profits on his own part, was not sufficient to establish guilt on the charge of illegal manufacture.

In the charge as given the court called the particular attention of the jury to the complaint that the defendant was engaged in the manufacture and read to the jury the law prohibiting such manufacture. The claim of the defendant was pointed out to the jury, that, though the farm was owned by him, some one other than he was operating it and that he did not know what was going on there and was in fact elsewhere and otherwise engaged, and the court told them that claim should have due consideration, and that the jury were to say whether the defendant was ignorant of what was going on, whether he knowingly permitted the violation of the law, whether he shared in the profits or in any other way was a participant in the enterprise, and the jury were warned against finding the defendant guilty of these charges upon suspicion, and that they must decide whether the State had proved the connection of the defendant with these operations or whether other persons were the proprietors and operators free from any control, participation or benefit by the defendant. This adequately and fully protected the legal rights of the defendant and no further protection would have been afforded by additional charges in the language of these requests.

The remaining assignment of error is the denial of the motion to set aside the verdict as against the law and the evidence. It is conceded that the illegal manufacture was going on in the barn on the farm of the defendant, but the claim is made that the evidence, upon the most favorable consideration in support of the verdict, fails to show any participation or interest therein on his part. The jury could reasonably have found from the evidence and from proper inferences therefrom that not only the farm and buildings were

the property of the defendant, but that the vats, machinery, utensils and materials used in the illegal manufacture were his property in whole or in part; that Mauli and Griffin, who were found on the premises at the time of the raid, were employed by or interested with the defendant; that they, with their families, lived in the defendant's farmhouse; that the defendant paid for the groceries and supplies which were sent to the farmhouse; that he had reserved a room or rooms in the same house for the use of himself and his family when visiting the farm, which he frequently did, sometimes as often as once or twice a week; that he had a personal office in the house containing safe and papers, to which safe he alone had access; that in a room adjoining his office was an electric buzzer or signal connected by a wire carried on a telephone pole to that portion of the barn where the still was; that large quantities of sugar, molasses and other materials used in the enterprise were stored in the defendant's buildings, and that the barn was kept locked. From these and other facts in evidence to which it is unnecessary to refer, we cannot say that the jury could not properly find that this enterprise was being conducted by the defendant in whole or in part. Indeed, it would hardly have been reasonable to conclude, in face of the evidence, that the defendant did not know what was being done with his property or that he was not connected with the enterprise. Upon the evidence as a whole, we think the jury acted fairly and reasonably, and reached a conclusion which was logical and just. The rule in this State has long been that a verdict will not be set aside unless manifest injustice has been done by it and that the wrong is so plain and palpable as to clearly show that the jury made some mistake in the application of legal principles or to justify the suspicion that they or some of them were in-

fluenced by corruption, prejudice or partiality. *State* v. *Gargano*, 99 Conn. 103, 105, 121 Atl. 657; *State* v *Schutte*, 97 Conn. 462, 464, 117 Atl. 508; *State* v. *Buxton*, 79 Conn. 477, 480, 65 Atl. 957.

Though not assigned as error upon the present appeal, we deem it advisable, in the interest of proper procedure and because of its importance, to call attention to one instruction contained in the charge in this case which was not strictly in accord with our law. We refer to that portion which was given as follows: "An accused person is not obliged to take the witness stand in his own behalf. If he feels the State has failed to overcome the legal presumption of innocence, or, for any reason, he desires not to become a witness, no opinion prejudicial to him can be drawn from such failure to testify." We make specific reference to the closing phrase: "no opinion prejudicial to him can be drawn from such failure to testify." So far from being an isolated instance, our observation is that this is a very common, if not, at present, an almost universal instruction given in our trial courts. Where or how it originated is uncertain, but it is clearly not within the letter or intent of our statute, which reads as follows: "The neglect or refusal of an accused party to testify shall not be commented upon to the court or jury." General Statutes, §6634, as amended by the Public Acts of 1919, Chapter 89.

Between 1867 and 1879 the statutory provision was: "Nor shall such neglect be alluded to, or commented upon by the prosecuting attorney, or by the court." This was repealed in 1879 and the present provision has been in force since that time.

In *State* v. *Monahan* (1921) 96 Conn. 289, 114 Atl. 102, we said: "All the restriction which this statute imposes is the omission of all reference, directly or indirectly, to the failure of the accused to testify. The

trial court should be alert to prevent violation of the statute by subterfuge or indirection." (P. 292). "This statute, deemed so essential to the just rights of an accused when first enacted, today has its doubters among our foremost jurists and publicists. But even though the appellate court, or the trial court, may regard the statute with less veneration than its originators did, and think even less of the judicial reasoning which supports an accused in failing to testify in his own behalf, neither court must permit any neglect or unseemly tolerance in its enforcement. While the statute remains a law, it is the duty of counsel to 'obey, and of the court to enforce,' it." (P. 290).

It will be observed that this instruction, now so commonly given, contains, in its final phrase, that which the statute does not require or suggest. There is nothing in the statutory provision or in our rules of law which requires the jury to disregard the fact that the accused did not testify, nor does it forbid the jury to draw its own conclusion from this circumstance. The requirements of law are fully met when counsel and the court have avoided comment upon the fact that the accused has failed to take the witness stand in his own behalf.

We are satisfied, from a careful study of the whole record in the case before us, that the defendant had a fair and impartial trial and that the trial court was justified in its denial of the motion to set the verdict aside.

There is no error.

In this opinion the other judges concurred.