HARTFORD NATIONAL BANK AND TRUST COMPANY
v. PAUL T. DIFAZIO ET AL.

LOISELLE, BOGDANSKI, LONGO, PETERS and PARSKEY, Js.

Argued January 3—decision released March 6, 1979

*Wesley W. Horton,* at oral argument; on the brief were *Paul T. DiFazio* and *Edith A. DiFazio,* pro se, the appellants (defendants).

*David T. Ryan,* with whom was *John H. Lawrence, Jr.,* for the appellee (plaintiff).

BOGDANSKI, J.   Prior to March 15, 1977, the defendants Paul and Edith DiFazio were the owners of a five-building apartment complex located in the city of Hartford and known as Broadview Gardens. Money for the construction of these apartments was made possible through a mortgage loan which the DiFazios obtained from the plaintiff Hartford National Bank and Trust Company.  Within a short time after the apartments were completed in 1968, the rising costs of utilities and taxes, combined with a ceiling on rents, caused the Broadview Gardens to operate at a loss.  In 1971 the defendants conceived the idea of converting the apartments into condominiums, but did not pursue the idea because of the tight market then existing for mortgage money.

In 1973, however, as part of a "home ownership" program sponsored by the state of Connecticut, the defendants embarked upon a project designed to convert the apartment complex into a condominium

association. Had the conversion gone through as planned, mortgage money for purchasers of the individual condominium units would have been available from the Connecticut Housing Finance Authority (CHFA), with the mortgages being insured by the federal Department of Housing and Urban Development (HUD). The major condition imposed by HUD was that 80 percent of the value of the units had to be presold to qualified buyers before the condominium association would be recognized by HUD. Upon application by the defendants, that requirement was subsequently reduced by HUD to 65 percent. In October of 1973 news releases concerning the condominium plan appeared in the Hartford papers and sometime thereafter the defendants employed Invest Management Group, Inc., as sales agent for the condominiums.

Sometime in the spring of 1974, the plaintiff bank agreed to handle the processing of condominium purchase applications, for an origination fee of 1 percent. Thomas Kelly, a mortgage official of the plaintiff, was assigned to this project. While Kelly continually assured the defendants that the applications were being duly processed, he, in fact, did little or no work on the applications, as he was then involved in embezzling large sums of money from the plaintiff, for which he has since been convicted and sentenced. When Kelly absconded at the end of August, 1974, he took with him the mortgage applications which had been submitted to him by the sales agent of the defendants. Twenty-six applications were later found in the parking garage at Constitution Plaza. The plaintiff subsequently assigned William McCue, another of its officers, to take over the task of processing of the condominium applications.

In January of 1975 the condominium conversion project was abandoned and in August of 1975, the plaintiff instituted foreclosure proceedings against the defendants. The defendants responded by filing a counterclaim in which they alleged that the plaintiff had been negligent in processing the applications for the condominiums; that the negligence of the plaintiff caused the failure of the condominium project; and that the failure of the condominium project resulted in considerable damage to them, including their inability to make payments as due on the mortgage held by the plaintiff.

After a trial to the court which consumed ten full court days and which resulted in almost 1000 pages of transcript, the court ordered judgment in favor of the plaintiff upon the foreclosure and also upon the counterclaim. No appeal was taken as to the judgment of foreclosure. The defendants have, however, appealed from the judgment upon their counterclaim.

On appeal the defendants claim that the trial court erred in finding that the defendants failed to prove they had presold either 80 percent or 65 percent of the units to qualified buyers, and in concluding therefrom that the negligence of the plaintiff in processing the applications submitted to it by the defendants was not the cause of the failure of the conversion project.[1]

---

[1] The defendants also claim that the court erred in refusing to admit into evidence (1) a copy of a letter allegedly written by Thomas Kelly to Mr. and Mrs. Cornell Wright, indicating that their mortgage application had been approved by HUD; and (2) evidence of a telephone conversation between Henry A. Newbury, president of the New Britain National Bank, and the plaintiff concerning the status of the Broadview Garden condominium conversion. Since our decision upon the first issue raised by the defendants is dispositive of this appeal, we need not address the claims of error addressed to the rulings on evidence.

Examination of the finding in this case reveals that the trial court found as facts that "[t]he defendants did not demonstrate that 80 percent of the value of the units or 65 percent of the units had been sold to qualified purchasers"; that "McCue had a total of forty-one applications and he did an analysis of each one"; that "none of the applicants who submitted applications after McCue took over was qualified for a mortgage"; that "of all the applications received by McCue, eleven at most would have been approved, and many of those depended upon someone to pick up the closing costs"; and that "an applicant would need somewhere between $700 and $2000 to close." From the facts found, as set forth above, the court reached the conclusion that "the defendants never met the presale requirement that 80 percent . . . or 65 percent of each type of units be presold to qualified buyers," and that "nothing that the plaintiff did or failed to do was a cause of the abandonment of the attempted condominium conversion."

In their assignment of errors, the defendants specifically attacked the validity of the particular findings of fact set forth above, arguing that those facts as found by the court were without support in the evidence. In their reply brief, in response to the plaintiff's claim that they had gone outside of the findings to support their arguments, the defendants reiterated their claims "that certain facts were found without evidence and should be deleted from the finding," that "certain conclusions, found as facts, were legally and logically inconsistent with the subordinate facts found by the court," and that "the court's decision was made contrary to and unsupported by the evidence."

While the defendants' assignment of errors and their briefs can hardly be characterized as models of either precision or clarity,[2] this court is of the opinion that a fair reading of those documents was sufficient to apprise the plaintiff of the fact that the defendants in their appeal were attacking the validity of certain material findings of fact made by the trial court.

When a finding of a material fact has been attacked as not supported by the evidence, the validity of such a claim is tested by the evidence printed in the appendices to the briefs. *State* v. *Vars,* 154 Conn. 255, 258, 224 A.2d 744 (1966). It is, moreover, a well settled rule that "the testimony printed in the appendices shall be deemed to embrace all testimony produced at the trial material to the issues on the appeal"; Maltbie, Conn. App. Proc. § 331; and that " 'this court will not look beyond the appendices to the briefs in order to find supporting evidence.' " *Grodzicki* v. *Grodzicki,* 154 Conn. 456, 459, 226 A.2d 656 (1967). "Under our rules 'it is incumbent upon the party who desires to sustain a challenged finding . . . to print as an appendix to his brief all the evidence, not printed by the other party, which he claims supports that

---

[2] We are aware of the fact that the defendants appeared pro se both in the court below and on the briefs on appeal. We note in this regard that "[a] party who, unskilled, in such matters, seeks to remedy some claimed wrong by invoking processes which are at best technical and complicated, is very ill advised and assumes a most difficult task." *O'Connor* v. *Solomon,* 103 Conn. 744, 745, 131 A. 736 (1926). Under the circumstances this court will, however, exhibit some degree of leniency towards the defendants, who have appeared pro se, although we cannot, and will not, entirely disregard the established rules of procedure, adherence to which is necessary in order that the parties may know their rights and in order that the real issues in controversy may be presented and determined. *O'Connor* v. *Solomon,* supra, 745–46.

finding.' " *Brodsky* v. *Brodsky,* 153 Conn. 299, 302, 216 A.2d 180 (1966); *Baton* v. *Potvin,* 141 Conn. 198, 200, 104 A.2d 768 (1954). As often reiterated by this court, " '[i]t is the duty of counsel to see that all necessary evidence is before the court.' " *Morningside Assn.* v. *Morningside Development, Inc.,* 172 Conn. 60, 64, 372 A.2d 141 (1976).

In the present case, the plaintiff has filed no appendix setting forth evidence to support the challenged findings, and the defendants' appendix recites no such evidence. Neither have we found any references in the plaintiff's brief to any portions of the transcript where evidence to support the court's findings could be found. Under the circumstances, we have no alternative but to conclude that the material findings of fact challenged by the defendants were not supported by the evidence; these findings must therefore be stricken. *Morningside Assn.* v. *Morningside Development, Inc.,* supra, 64.

The portions of the court's finding which remain after the elimination of the challenged findings cannot sustain the court's conclusion that nothing that the plaintiff did or failed to do was a cause of the failure of the attempted conversion project, and a new trial on the counterclaim is thus required.

There is error in part, the judgment is set aside as to the counterclaim only and the case remanded with direction for a new trial limited to the counterclaim.

In this opinion the other judges concurred.