CARLETON K. SWENSON ET AL. *v.* PAUL DITTNER ET AL.

BOGDANSKI, PETERS, HEALEY, ARMENTANO and WRIGHT, Js.

Argued December 9, 1980—decision released March 10, 1981

*Lloyd L. Anderson,* for the appellants (defendants).

*Ralph P. Dupont,* with whom, on the brief, was *Bonita C. Frasure,* for the appellees (plaintiffs).

290

ARMENTANO, J. This is an action to quiet title to a portion of real estate[1] owned by the plaintiffs in the town of East Lyme. The Boston Post Road, a public highway, bounds this real estate on the south, and to the north there is a tract of land

[1] The portion in question is described in the deed:
"Two certain tracts or parcels of land with the buildings and motel units thereon known general as Thrift Motel, situated in the Town of East Lyme, County of New London, State of Connecticut, more particularly bounded and described as follows:

FIRST TRACT: Beginning at a Connecticut Highway Department merestone located on the southeasterly line of the Connecticut Turnpike, so-called, at the intersection of property of the Riverhead Cemetery Association, the property herein described and said Connecticut Turnpike; thence running in a southwesterly direction by and along the southeasterly line of said Turnpike Three Hundred Forty-two and three tenths (342.3) feet to another merestone in the southerly line of said Turnpike; thence turning left 32° 2' and running One Hundred Forty-Five and nine tenths (145.9) feet by and along the property of the State of Connecticut to another merestone located at the intersection of the northeasterly line of Route U.S. 1A commonly called the Old Boston Post Road and the easterly line of the approach from said Post Road to the Connecticut Turnpike; thence turning left 89° 46' and running by and along the northeasterly line of said Post Road Two Hundred Sixty-one (261) feet to a merestone; thence turning to the right 79° 09' and running southerly by and along said Post Road line Twenty-five and two hundredths (25.02) feet to another merestone; thence turning left 90° and running by and along the northeasterly line of said Post Road Sixty-nine and two tenths (69.2) feet to another merestone; thence running to the right 3° 52' and running by and along said northeasterly line of the Post Road One Hundred Ninety-one and forty hundredths (191.40) feet to an iron pipe; thence turning to the right at an interior angle of 67°, more or less, following the easterly line of a two (2) rod lane in a northwesterly direction by and along land of The Riverhead Cemetery Association Five Hundred Fifty-seven (557) feet, more or less, to the point and place of beginning.

Said premises are subject to such easements of record may appear and *to such easements as previously may have been acquired by others, especially does this apply to an easement granted to the State of Connecticut, the documents for which are to be* [.]"
The italicized portion was crossed out by a single black line. Another portion of the deed was stricken out and is not legible.

owned by the Riverhead Cemetery Association. The defendants acquired, by a deed dated June 2, 1970, title to real property on the eastern boundary of the plaintiffs' land. The dispute arises from the defendants' claim of an interest in a two-rod right-of-way (hereinafter the two-rod lane) on the plaintiffs' property at this eastern boundary. The two-rod lane runs from the Boston Post Road to the cemetery, and contains in its southeast corner a section of a paved driveway connecting the Boston Post Road to the defendants' property. No evidence was offered indicating whether this driveway had been used by the defendants' predecessors in title. Two easements have been granted to the state of Connecticut: one adjoins the western boundary of the two-rod lane and runs parallel to it; the other is a drainage easement and is located at the northern end of the two-rod lane.

After a trial to the court, judgment was rendered for the plaintiffs. In its memorandum of decision, the court concluded that the plaintiffs owned the two-rod lane, and that the defendants had no right to use it for access to their property. From this judgment the defendants have appealed, claiming several errors.

## I

The defendants claim error because the town of East Lyme and the state of Connecticut were not made parties to the action, even though they may have had an interest in the disputed title. The defendants allege that the town's interest centered on its maintenance of the two-rod lane and its use as a public way, while the state's concern grew from its ownership of the easements.

An action to quiet title is a statutory action instituted under the provisions of General Statutes § 47-31. The statute requires the plaintiffs to name the person or persons who may claim such adverse estate or interest. *Lake Garda Improvement Assn.* v. *Battistoni,* 155 Conn. 287, 293, 231 A.2d 276 (1967). So that the trial court can make a full determination of the rights of the parties to the land, an action to quiet title is brought against persons who claim title to or have an interest in the land. *Cahill* v. *Cahill,* 76 Conn. 542, 547, 57 A. 284 (1904). Only the parties to an action to quiet title are bound by the judgment. *Lake Garda Improvement Assn.* v. *Battistoni,* supra, 294-95. The failure to include the town of East Lyme and the state of Connecticut in this case is not error because the decision to join a party in a suit to quiet title is made by the plaintiff.

## II

The second claim is that the court erred in its conclusion that the plaintiffs were the owners of title to the two-rod lane. "Our review of such claims is limited to a determination of whether the decision of the trier was clearly erroneous in light of the evidence and the pleadings in the whole record. Practice Book § 3060D; *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 221-22, 435 A.2d 24 (1980)." *Stelco Industries, Inc.* v. *Cohen,* 182 Conn. 561, 564, 438 A.2d 759 (1980).

The description of the first tract, set forth in the deed from the plaintiffs' grantors to them, encompasses and contains the two-rod lane. See footnote 1, supra. Edmond Sitty, a licensed engineer, a licensed surveyor and town engineer for Groton, testified that from his examinations in the field, of

the land records, and of maps and drawings prepared for the plaintiffs' predecessors in title, it was his opinion that the plaintiffs owned the two-rod lane and that the defendants' driveway encroached on the plaintiffs' property. His certified survey was admitted into evidence. Neal Williams, an attorney, examined the chain of title to the plaintiffs' property dating back eighty years and concluded that title to the two-rod lane was vested in fee simple in them.

Cecile Bank, a licensed surveyor and witness for the defendants, testified that the plaintiffs did not own title to the two-rod lane. He was unable, however, to name the owner, stating that further research would be required to establish his identity.

The sifting and weighing of evidence is peculiarly the function of the trier. "[N]othing in our law is more elementary than that the trier is the final judge of the credibility of witnesses and of the weight to be accorded their testimony." *Steinman* v. *Maier,* 179 Conn. 574, 576, 427 A.2d 828 (1980), quoting *Toffolon* v. *Avon,* 173 Conn. 525, 530, 378 A.2d 580 (1977). "The rare occasion where testimony supporting a fact is such that the court could not reasonably disbelieve it; *Fidelity & Casualty Co.* v. *Constitution National Bank,* 167 Conn. 478, 489, 356 A.2d 117 (1975); is not present in this case." *Steinman* v. *Maier,* supra.

On appeal, the defendants attack the plaintiffs' claim of ownership of the two-rod lane by implying that the defendants were in fact the true owners. This argument must fail because of the court's finding of the defendants' concession during trial that they had no claim of title in the two-rod lane. This

finding is supported by their own testimony.[2] Furthermore, the defendants were unable to identify any other person as the true owner of the two-rod lane.

### III

The defendants also attack the court's conclusion that they had no use right in the two-rod lane. This argument must be judged by the same standard as the previous one. See *Stelco Industries, Inc.* v. *Cohen,* supra. After an examination of the record, we are unable to find any express easement granting to the defendants the right to use the two-rod lane. Any claim for a prescriptive easement in favor of them must likewise fail.

In a claim for a prescriptive easement, the burden is on the party claiming the right. *Horowitz* v. *F. E. Spencer Co.,* 132 Conn. 373, 377, 44 A.2d 702 (1945); *Shea* v. *Gavitt,* 89 Conn. 359, 363, 94 A. 360 (1915). The essential elements are a use which is open, visible, continuous and uninterrupted for fifteen years and made under a claim of right. General Statutes § 47-37; *Mihalczo* v. *Woodmont,* 175 Conn. 535, 541, 400 A.2d 270 (1978); *Wadsworth Realty Co.* v. *Sundberg,* 165 Conn. 457, 463, 338 A.2d 470 (1973); *Dunn* v. *Santino,* 139 Conn. 352, 355, 93 A.2d 726 (1952). Whether the requirements for such a right have been met in a particular case presents a question of fact for the trier of facts. *Wadsworth Realty Co.* v. *Sundberg,* supra, 464; *Klein* v.

---

[2] In response to a statement by the court, the defendant husband stated: "I don't claim—never did claim that I own the two-rod lane." He also volunteered to the court the following statements: "For the record, your Honor, I do not claim ownership of the piece of driveway in question." "I said I do not, I never did, nor do I now claim ownership of the section of driveway in question here on the two-rod lane."

*DeRosa,* 137 Conn. 586, 589, 79 A.2d 773 (1951). The record indicates that the defendants did not meet their burden, particularly the fifteen year element. Neither is there any evidence to establish an easement by necessity or by implication. *Hollywyle Assn., Inc.* v. *Hollister,* 164 Conn. 389, 398–99, 324 A.2d 247 (1973); *D'Amato* v. *Weiss,* 141 Conn. 713, 716–17, 109 A.2d 586 (1954).

The defendants also argue that the two-rod lane was a public way. The two elements essential to establish a valid dedication of a public way are clearly laid out in *A & H Corporation* v. *Bridgeport,* 180 Conn. 435, 438–39, 430 A.2d 25 (1980), and need not be repeated here. We have examined the record and have found the evidence insufficient to support a finding of the existence of either of these elements.

## IV

The defendants next claim that the court erred in advising the pro se defendants[3] that they could not claim ownership of the two-rod lane by adverse possession. During the trial, the defendant husband and the court exchanged responses.[4] The isolated

---

[3] We are aware that the defendant husband appeared pro se in his trial. We note in this regard that "[a] party who, unskilled in such matters, seeks to remedy some claimed wrong by invoking processes which are at best technical and complicated, . . . assumes a most difficult task." *O'Connor* v. *Solomon,* 103 Conn. 744, 745, 131 A. 736 (1926). "Under the circumstances this court will, however, exhibit some degree of leniency towards the defendants, who have appeared pro se, although we cannot, and will not, entirely disregard the established rules of procedure, adherence to which is necessary in order that . . . the real issues in controversy may be presented and determined." *Hartford National Bank & Trust Co.* v. *DiFazio,* 177 Conn. 34, 39 n.2, 411 A.2d 8 (1979).

[4] "The Court: You can introduce whatever deeds you wish to which you think support your position.

Mr. Dittner: I have quite a few of them.

The Court: Then this is your opportunity to introduce them.

remark by the trial court that "you only got your property in '77 so there is no question of adverse possession," was unfortunate and subject to misinterpretation. Taking the dialogue as a whole, however, the court was helpful and informative as to the proof required to establish adverse possession. The defendants were informed that they should put into evidence prior deeds and the testimony of prior owners of their property. With this evidence, the trial court could determine the full period of possession by the prior owners of their land. More importantly, even if the court's remarks were improper, they worked no prejudice to the defendants. Adverse possession deals with the ownership of real property, not the use of it, and the defendants admitted that they made no such claim of ownership. See footnote 2, supra.

---

Mr. Dittner:   Well, I'll introduce them all.

The Court:   Well, you can put the deeds in at this time.

Mr. Dittner:   They are not necessarily in order but they represent title searches done by Mr. Bank, dating back to 1852, I believe.

The Court:   Well, do you have anything to testify to yourself of your own knowledge:   Has anyone ever said anything to you, Mr. Swenson, or any of his predecessors indicate that you have rights over the roadway?

Mr. Dittner:   Yes.

The Court:   I think it's going to be important that we get those copies of those deeds in the record so that I can make a determination based upon the full evidence and you will have to do that.

Mr. Dittner:   Alright then.

The Court:   You only got this property in '77 so there   is no question of adverse possession.   Have you discussed this with Mr. Swenson at any time where your line is?

Mr. Dittner:   No.

The Court:   No.   You only say you discussed with Dr. Dey and Mr. Meyers.

Mr. Dittner:   Mr. Meyers right, the former owners and also I might add also the town attorney, Mr. Marion."

## V

The defendants' final claim is that because they appeared pro se, the trial court erred by not advising them of three possible defenses to the plaintiffs' complaint: implied right-of-way (easement by implication), easement by necessity and prescriptive easement.[5]

"A judge . . . should conduct himself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary." He should not "convey or permit others to convey the impression that they are in a special position to influence him." Canons 2A and 2B of the Code of Judicial Conduct. The trial judge should be the exemplar of dignity and impartiality. *United States* v. *Cruz,* 455 F.2d 184, 185 (2d Cir.), cert. denied, 406 U.S. 918, 92 S. Ct. 1769, 32 L. Ed. 2d 117 (1972). "The action of a judge taking an apparent position of advocacy in a case before him has been continually condemned." (Citations omitted.) *State* v. *Echols,* 170 Conn. 11, 13–14, 364 A.2d 225 (1975); *Quednau* v. *Langrish,* 144 Conn. 706, 719, 137 A.2d 544 (1957). Once a judge becomes an advocate for one of the parties in a lawsuit, grounds for disqualification as a judge exist because of the common-law maxim that "no one shall be judge in his own cause." *French* v. *Waterbury,* 72 Conn. 435, 438, 44 A. 740 (1899).

If the trial judge in this case had advised the pro se defendants of their potential defenses, grounds for a motion for dismissal might have existed. A trial judge's role is to preside over a

[5] We do not consider whether there would have been error if the trial court had informed the pro se defendant of these possible defenses. That question is not before us in this case.

trial in an impartial manner. He cannot favor one party in a cause of action to the detriment of the other party. If the trial judge had acted as the defendants suggest, his transformation from a judge to an advocate would have begun, and he cannot be impartial and an advocate at the same time.

The defendants also claim that the trial court erred by not making its own inquiries as to the stricken portions of the plaintiffs' deed when it was admitted into evidence. See footnote 1, supra. They argue that such an inquiry was necessary because the defendants appeared without counsel.

" 'Whether or not the trial judge shall question a witness is within his sound discretion. The extent of the examination is likewise within his sound discretion. Its exercise will not be reviewed unless he has acted unreasonably, or, as it is more often expressed, abused his discretion.' *State* v. *Cianflone,* 98 Conn. 454, 469, 120 A. 347 [1923]; 3 Wigmore, Evidence (3d Ed.) § 784. A judge is not an interlocutor presiding over a debate. He is a minister of justice. *Felix* v. *Hall-Brooke Sanitarium,* 140 Conn. 496, 501, 101 A.2d 500 [1953]; *Strong* v. *Carrier,* 116 Conn. 262, 263, 164 A. 501 [1933]; *Peiter* v. *Degenring,* 136 Conn. 331, 338, 71 A.2d 87 [1949]. To this end, he is empowered to exercise a reasonable discretion in the conduct of a trial. *Lawrence* v. *Abrams,* 121 Conn. 480, 482, 185 A. 414 [1936]." *McWilliams* v. *American Fidelity Co.,* 140 Conn. 572, 580–81, 102 A.2d 345 (1954); see *Hutchinson* v. *Plante,* 175 Conn. 1, 3, 392 A.2d 488 (1978); *State* v. *Colonese,* 108 Conn. 454, 457, 143 A. 561 (1928). Moreover, the defendants had the opportunity to make their own inquiry at trial but failed to do so.

We recognize that some degree of leniency should be exhibited toward parties who appear pro se. See footnote 3, supra. Under the circumstances of this case, however, there is no error either in the trial court's exercise of its discretion not to inquire as to the stricken portions of the plaintiffs' deed or in its failure to counsel the defendants as to possible defenses to the plaintiffs' claim.

Although there is no error in the court's decision, we do find error in the form of the judgment, it is set aside and the case is remanded with instructions to conform the concluding portion of the judgment with Practice Book, Form 707.10.

In this opinion BOGDANSKI, PETERS and HEALEY, Js., concurred.

WRIGHT, J. (dissenting in part). I agree with the majority in that portion of the opinion which affirms that the plaintiffs are the owners of title to the premises. However, in view of the fact that the lay defendants appeared pro se and in view of the fact that the record indicates the possibility of a right-of-way by prescription or necessity, I would feel that this decision should not foreclose further proceedings on behalf of the defendants.