[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON RE-ARGUED CLAIM OF PRESCRIPTIVE EASEMENT AFFECTING RIPARIAN RIGHTS
After this court issued a memorandum of decision on the merits of all of the parties' claims in the above-captioned case, the plaintiff City of Waterbury moved for reargument and reconsideration of several issues. In a ruling dated March 28, 2000, this court granted reargument on just one of the issues for which it was sought. That issue is the plaintiffs claim that it proved it had acquired a prescriptive easement with regard to the riparian rights of those defendants who are riparian owners of land along the Shepaug River.
In the February 16, 2000 decision on the merits, this court analyzed this claim applying the standard of proof of clear and convincing evidence. The parties agree that this claim should instead CT Page 5362 be analyzed using the usual civil standard of proof, that is, whether the elements of the claim of acquisition of a prescriptive easement regarding the defendants' riparian rights were proved by a fair preponderance of the evidence. Having heard reargument on whether the plaintiff proved its claim by the latter standard, the court finds that the claim was not proven.
Standard for establishing a prescriptive easement
A prescriptive easement is established by proving an open, visible, continuous and uninterrupted use for fifteen years made under a claim of right. Robert S. Weiss Co. v. Mullins,196 Conn. 614 (1985); Swenson v. Dittner, 183 Conn. 289, 294 (1981); Putnam,Coffin Burr, Inc. v. Halpern, 154 Conn. 507, 515 (1967);Andrzejczyk v. Advo System, Inc., 146 Conn. 428, 431 (1958); Simondsv. Shaw, 44 Conn. App. 683, 687 (1997); Gioielli v. Mallard CoveCondominium Assn., Inc., 37 Conn. App. 822, 829 (1995). The appellate courts have recognized repeatedly that "[w]hether the requirements for such a right have been met in a particular case presents a question for the trier of facts after the nature and character of the use and the surrounding circumstances have been considered."Andrzejczyk v. Advo System, Inc., supra, 146 Conn. 431; Robert S.Weiss Co. v. Mullins, supra, 196 Conn. 618; Gregory's Inc. v.Baltim, 142 Conn. 296, 299 (1955); Simonds v. Shaw, supra,44 Conn. App. 688; Krohner v. Seyburt Associates Ltd. Partnership,20 Conn. App. 298 (1989), cert. denied, 213 Conn. 814 (1990).
Requirement that use be adverse
The evidence clearly establishes that Waterbury's impairment of the riparian rights of the Town of Washington, a riparian landowner on the Shepaug River, was undertaken by the express permission granted by Washington in the 1921 contract. As this court noted in the February 16, 2000 memorandum of decision, "[a] use by express or implied permission or license cannot ripen into an easement by prescription." Westchester v. Greenwich, 227 Conn. 495, 501 (1993);Klar Crest Realty, Inc. v. Rajon Realty Corp., 190 Conn. 163, 168
(1983); Sachs v. Toquet, 121 Conn. 60, 66 (1936). Washington granted Waterbury permission to diminish the flow of the river past its property. Since the diminution was the result of that grant of permission, it cannot be characterized as adverse, and evidence of use with the permission of the owner does not support a claim of adverse acquisition of an easement.
Waterbury claims that while its actions pursuant to the 1921 contract may have been permissive, its diversions in excess of that CT Page 5363 permission were adverse. This contention, while capable of being stated as a schematic proposition, is meaningless in reality. Water flows in volume, not in discrete measurable metes and bounds like the roads and paths generally at issue in claims of prescriptive easements. Waterbury had the opportunity to impair the flow of the river to a degree over and above the degree authorized in the 1921 contract only because that contract allows it to impair Washington's riparian rights at all. It would be impossible for Waterbury to exercise any claimed easement in excess of the authorization without first exercising the right permitted under the contract.
Even if this analysis were rejected, the use over and above the authorized use was not open and visible, and for that reason fails to satisfy the proof necessary to establish a prescriptive easement.
Requirement of Open and Visible Use
Because most claims involving prescriptive easements concern passage over land, the issue of whether the adverse use is "open, visible and notorious" is rarely an issue. Most Connecticut cases concerning easements involve claims of passage of another landowner over a road, path or driveway or, in the case of prescriptions concerning littoral rights, they involve construction of visible docks in the waterway.
The requirement that the adverse use be open and visible and notorious serves the purpose of notice to the landowner that his property rights are being invaded and that action is necessary to prohibit adverse use. In Westchester v. Greenwich, supra,227 Conn. 495, the plaintiff claimed that it had acquired a right to "avigation," that is, to make low flights over the defendant's property to facilitate access by air into the plaintiffs airport, and to cut trees on the defendant's land in aid of such flights. The Connecticut Supreme Court noted that the passage of fifteen years of such use was not dispositive of the claim of prescriptive easement because the plaintiffs use of the approach area during that time had never involved any interference with the use and enjoyment of the defendants' properties. The Court therefore concluded that the defendants cannot have been required to seek relief when the overflights had never interfered with their use and enjoyment of their property. Westchester v. Greenwich, supra, 227 Conn. 503-504.
Where a prescriptive easement was claimed for an underground sewer pipe, the Supreme Court found that since the pipe from the claimant's house could not be seen and the owner of the servient interest had no knowledge of the existence of the sewer beyond his CT Page 5364 own house, "the user was not open and adverse during the necessary fifteen years." Exley v. Gallavin, 96 Conn. 676, 677 (1921). The Court reasoned that although the landowner knew that a sewer connection existed between the back of his house and a particular sewer and had made other connections nearer to the street line, observation of a sewer connection larger than would be usual for a single home did not make the adverse use "open and visible." The Supreme Court rejected the contention, which Waterbury makes in this case, that the landowner against whom an easement is claimed has a duty to investigate to determine if adverse uses are being made that would infringe his property rights:
 As to this claim, it is to be observed that the defendant was under no legal duty to use reasonable diligence in discovering the fact of a concealed user . . . [i]t is for the party who seeks to establish an easement by user to exercise his claimed right so openly as to give the owner knowledge and full opportunity to assert his own rights.
(Emphasis supplied.) Exley v. Gallavin, supra, 96 Conn. 679.
The Court rejected the argument that the landowner, who was sued by a subsequent purchaser, had a duty to dig to investigate the existence of a sewer line under his property after the claimant said that such a line ran through the property.
It seems likely that the location of the sewer pipe for the property of the claimant in Exley v. Gallavin could have been determined by inspecting records of the sewer authority or plans of the house from what it originated; however, the Supreme Court did not find that the landowner against whom the prescriptive easement was asserted had any duty to research such records to determine if, unbeknownst to him, adverse use was being made of his property.
Turning to the present case, the evidence did not establish that the diversion of water in excess of what was authorized by the 1921 contract caused a difference in the flow of the Shepaug that was sufficiently visible to be distinguishable from the authorized level of diversion. Waterbury has argued that the lack of proof of an open, visible change does not defeat its claim because the defendants could have discovered the amount of the diversions by inspecting the water authority's records and performing complicated statistical modeling to determine the impact. This court does not conclude that the possibility of examining technical records and reports, if a landowner knew of their existence, constitutes "open, visible and CT Page 5365 notorious" adverse use sufficient to put an affected landowner on notice of the need to act to stop the use before fifteen years expired. This argument must be rejected because the Supreme Court ruled in Exley v. Gillavin, supra, that the duty of proving open and visible use is on the claimant, and that the landowner against whom the easement is claimed does not have a duty to investigate to determine whether an adverse use is occurring.
Waterbury has cited an old case, S.O.C. Co. v. Ansonia WaterCo., 83 Conn. 611 (1910), as establishing that the extent of adverse effects on riparian rights is measured by the capacity of the diversion pipe installed by the party claiming to have established a right by adverse use. In fact, this point was not one determined by the Supreme Court at all; rather, it was a proposition to which the plaintiff in that case stipulated:
 This result follows from the concession made in the brief of plaintiffs counsel, hereinafter more fully noticed, that where there has been a diversion through a pipe of limited capacity the right acquired is conveniently and ordinarily measured by the capacity of that pipe.
S.O.C. Co. v. Ansonia Water Co., supra, 83 Conn. 627-28.
The defendants in the case before this court made no such concession. The terms of the 1921 contract did not permit diversion to the utmost extent possible with the equipment and pipes to be installed in the proposed dam and tunnel, and the evidence did not establish that Waterbury has ever operated the Shepaug diversion at its maximum capacity. It would be illogical to hold that a party has adversely established a level of use it has never in fact made of the property right of another.
Waterbury has asserted that all landowners in the Town of Washington lost their riparian rights by operation of the 1921 contract. This claim is defeated by the ruling in Mihalczo v.Woodmont, 175 Conn. 535, 544 (1978), that a town does not represent the property rights of its inhabitants with respect to the inhabitants' own land and has no authority to assert them or put them in jeopardy.
Claims of prescriptive easements against other defendants
Waterbury claims that regardless of the merit of its claim of a prescriptive easement regarding the rip arian rights of Washington, it has established such a right with regard to the other defendants. CT Page 5366 In effect, it asks this court to adjudicate a claim of a right that cannot be exercised even if it exists. Since this court has found that Waterbury has no prescriptive easement to impair the riparian rights of Washington, Waterbury cannot impair the flow of the Shepaug on the basis of a prescriptive easement as to Washington's riparian rights. Even if Waterbury had, for at least fifteen years, openly impaired the rights of the other riparian defendants, with whom it had no contract, it could not manage the flow of the river in a different way with regard to these defendants than with regard to Washington, since it has no means to vary its regulation of the flow at different points along the river. Likewise, Waterbury could not exercise any prescriptive right in violation of the Connecticut Environmental Protection Act.
Despite these observations, because of the obligation to decide all claims asserted, the court will decide, under the agreed standard of proof of a fair preponderance of the evidence, whether Waterbury proved its claim of a prescriptive easement against the riparian rights of the defendants Town of Roxbury, Steep Rock Association, Inc., the Roxbury Land Trust, and Shepaug River Association, Inc. The court finds that Waterbury has failed to prove by a fair preponderance of the evidence that its impairment of these defendants' riparian rights was open and visible. As the court stated in the February 16, 2000 memorandum of decision, the mere presence of the dam and its infrastructure did not constitute notice that Waterbury was impairing these defendants' riparian rights by the method of its operation of the dam. The mechanism for controlling the diversions was not open and visible to the downstream landowners but was on restricted-access land owned by Waterbury. The variations in the flow of the river were affected by variations in rainfall, so that variations were not openly and visibly the results of the actions of Waterbury. In the early cases cited by Waterbury, the presence of an upstream dam inevitably meant a diminution in flow to a downstream landowner as the upstream mills had no alternative source of water. The circumstances are different in this case because Waterbury had two sources of water: the Shepaug and the Wigwam watershed, seven miles away. The fact that Waterbury operated its public water system did not serve as an open and visible impairment of the defendants' rights, since Waterbury was able to supply its citizens' needs for water from the three reservoirs on its own land in the Wigwam watershed, with a capability of using water from the Shepaug only to an extent that did not create any open, visible impairment of the flow of the river. The evidence established that Waterbury's impairment of these defendants' riparian rights was not open and visible until Waterbury made major changes in the way it operated its water system in 1988-89, a period less than fifteen CT Page 5367 years prior to the institution of the defendants' counterclaim for injunctive relief against impairment of their riparian rights.
In a very early case, Osborne v. Norwalk, 77 Conn. 663 (1905), the Connecticut Supreme Court found that the mere fact that a city had maintained a dam on a waterway for thirty years did not prevent a downstream riparian owner from prevailing on a claim of impairment of riparian rights. The Court ruled that even if the city had a prescriptive right to have a dam on the river, that right allowed it to make only reasonable use of the stream: "[a] right to reasonable use of a riparian right does not justify its unreasonable use . . . nor would a right to divert water permanently from its natural course, to an extent not substantially injurious to the riparian rights of others, carry a right to divert it to an extent that was substantially injurious to them." Osborne v. Norwalk, supra,77 Conn. 665. Likewise, in Adams v. Manning, 48 Conn. 477 (1881), the Court ruled that despite the right of the upstream defendants to control a dam and reservoir, ". . . their power over it was held in strict subjection to this law of a reasonable and customary use as between themselves and other mill-owners below, which thirty years of such use had imposed on them." The Court ruled in Adams v. Manning that the failure of downstream owners to object to the dam initially did not foreclose them from seeking relief when the dam owner altered the dam in a way that increased the impact on their rights. Id.
Similarly, in Wadsworth v. Tillotson, 15 Conn. 366, 373 (1843), the Court discussed the fact that rights to water flows may be acquired by several methods, including by prescription, then stated:
 But whatever may be the rights of any proprietor, or however acquired, it must be exercised in a reasonable manner, and so as not unnecessarily to injure the rights of others.
The elements of proof of open and visible conduct for a period of fifteen years, discussed above, were not proven. The case law cited above negates Waterbury's claim that it need not prove open and visible conduct because the defendants might have discovered its actions if they had done extensive and laborious research, a burden the law does not impose on landowners as a cost of avoiding loss of their property rights.
Conclusion
Waterbury has not established by a fair preponderance of the evidence its claim of prescriptive easement against the riparian CT Page 5368 rights of any of the defendants. The remedy granted by the court to redress the violation of the defendants' riparian rights is the same remedy as is granted with regard to the proven counterclaim of violation of the Connecticut Environmental Protection Act.
Beverly J. Hodgson Judge of the Superior Court