140 MAIN STREET-DERBY, LLC *v.* CLARK
DEVELOPMENT, LLC
(AC 29910)

Bishop, Beach and Peters, Js.

Argued April 16—officially released August 4, 2009

*Matthew B. Woods*, for the appellant (defendant).

*Joseph A. Kubic*, for the appellee (plaintiff).

*Opinion*

BEACH, J. The defendant, Clark Development, LLC, appeals from the judgment of the trial court rendered in favor of the plaintiff, 140 Main Street-Derby, LLC. The defendant claims that the court's finding that the plaintiff has a prescriptive easement over parcels of its property designated as D1 and D2 is clearly erroneous

because the plaintiff did not continuously use the subject parcels for the statutorily prescribed period of fifteen years. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of the defendant's appeal. The plaintiff and the defendant are owners of abutting property on Main Street in Derby. The plaintiff owns 140-146 Main Street, and the defendant is the owner of 148-156 Main Street, which is immediately to the west and south of the plaintiff's property. The defendant's property is denoted on maps as consisting of schedule B; schedule D, parcel 1; schedule E; and schedule D, parcel 2. The issue on appeal is whether parcels D1 and D2 are properly subject to a prescriptive easement for parking in favor of the plaintiff.

The plaintiff's predecessor in interest, Francesco Cirino, purchased 140-146 Main Street with a partner in 1975. In 1977, Cirino became the sole owner of the property. The property consisted of a chicken market, which was run by Cirino and his partner until 1982, as well as other commercial buildings and residential apartments. Since at least 1975, the owners of 140 Main Street and their tenants and customers used D1 for parking. In 1976, after a bowling alley that had been on D2 burned down, that parcel was used for parking by such owners, tenants and customers as well. The defendant's predecessor in interest, Alphonse Ippolito, owned 148-156 Main Street at this time. In 1977, Ippolito confronted Cirino concerning Cirino's use of parcels D1 and D2. During that confrontation, Cirino told Ippolito that he would continue to park there "and that's the way it is." Cirino did not hear from Ippolito again concerning his use of parcels D1 and D2.

In August, 2004, the plaintiff purchased 140-146 Main Street from Cirino. In March, 2005, Carl Yacobacci and Phillip Clark, members of the defendant limited liability

company, purchased 148-156 Main Street from Ippolito's estate. At a meeting between Samuel Rizzitelli, the principal of the plaintiff limited liability company, and Yacobacci and Clark, Rizzitelli claimed a right to parcels D1 and D2 by adverse possession. The defendant thereafter sent letters to Rizzitelli and the tenants of his building, demanding that they stop using any of the property located at 148-156 Main Street. The defendant also placed a fence and "no parking" signs on the property.

The plaintiff then brought this action against the defendant, claiming, inter alia, that it had acquired a prescriptive easement over the parcels at issue. The court found, inter alia, that the plaintiff had acquired a prescriptive easement over parcels D1 and D2.[1] This appeal followed. Additional facts will be set forth as necessary.

"Whether a [prescriptive easement] has been acquired presents primarily a question of fact for the trier after the nature and character of the use and the surrounding circumstances have been considered. . . . When the factual basis of the court's decision is challenged, the reviewing court must determine whether the facts are supported by the evidence or whether they are clearly erroneous. . . . In such cases, the trier's determination of fact will be disturbed only in the clearest of circumstances, where its conclusion could not reasonably be reached." (Internal quotation marks omitted.) *Stefanoni* v. *Duncan*, 92 Conn. App. 172, 184, 883 A.2d 1271 (2005), rev'd in part on other grounds, 282 Conn. 686, 923 A.2d 737 (2007).

"To establish an easement by prescription in accordance with General Statutes § 47-37,[2] [the party claiming

---

[1] The plaintiff also claimed, inter alia, that it had an express easement over the schedule E area. The court agreed. The defendant makes no claim on appeal with respect to that finding.

[2] General Statutes § 47-37 provides: "No person may acquire a right-of-way or any other easement from, in, upon or over the land of another, by

to have acquired it] must prove the necessary elements by a preponderance of the evidence. . . . In applying [§ 47-37, our Supreme Court] repeatedly has explained that [a] party claiming to have acquired an easement by prescription must demonstrate that the use [of the property] has been open, visible, continuous and uninterrupted for fifteen years and made under a claim of right." (Internal quotation marks omitted.) *Stefanoni* v. *Duncan*, supra, 92 Conn. App. 184. "Prescriptive easements . . . do not require exclusive use by the claimant . . . and the burden of proof is by preponderance of the evidence . . . ." (Internal quotation marks omitted.) *Boccanfuso* v. *Green*, 91 Conn. App. 296, 310, 880 A.2d 889 (2005). "Once established, a prescriptive easement appurtenant to the benefited property generally runs to all subsequent owners thereof." *Boccanfuso* v. *Conner*, 89 Conn. App. 260, 268, 873 A.2d 208, cert. denied, 275 Conn. 905, 882 A.2d 668 (2005). Because the defendant contests only the court's determination that the defendant's use had been continuous for more than fifteen years, we limit our review to that element.

The defendant claims that the court's finding that the plaintiff has a prescriptive easement over parcels D1 and D2 is clearly erroneous. The court found, inter alia, that Cirino's use, the beginning of which predated the plaintiff's use by approximately twenty-nine years, fulfilled the fifteen year requirement to provide Cirino with a prescriptive easement over parcels D1 and D2. The defendant specifically argues that the evidence revealed that there was no fifteen year period of continuous adverse use by the plaintiff of the subject parcels between 1975, when Cirino purchased 140-146 Main Street,[3] and May, 2005, when the

the adverse use or enjoyment thereof, unless the use has been continued uninterrupted for fifteen years."

[3] We note that "[i]f one party's period of use or possession is insufficient to satisfy the fifteen year requirement, that party may 'tack on' the period of use or possession of someone who is in privity with the party, a relationship that may be established by showing a transfer of possession rights."

defendant put up fences and "no parking" signs.[4] We disagree.

There was testimony from several witnesses supporting the court's finding that Cirino used the subject parcels continuously for at least a fifteen year interval. Cirino's testimony revealed that since at least 1975, the owners of 140-146 Main Street and their tenants and customers used D1 for parking. In 1976, after a bowling alley that had been on D2 burned down, that parcel was used for parking as well. Cirino testified that in 1977, he and Ippolito had a hostile confrontation concerning Cirino's use of parcels D1 and D2 as a parking area for tenants and business patrons of 140 Main Street. He testified that Ippolito, on occasion, would come in the store and "start raising hell," and then "he would walk out." This happened two or three times. Finally, Cirino excused himself from his customers and

---

*McBurney* v. *Cirillo*, 276 Conn. 782, 813, 889 A.2d 759 (2006). " [A] party may establish a prescriptive right by proving the adverse use by a predecessor in title for the requisite amount of time." *Boccanfuso* v. *Conner*, supra, 89 Conn. App. 268.

[4] The defendant also takes issue with the court's finding that "[t]he testimony [of Cirino] does not suggest that Ippolito subsequently did anything to prevent Cirino or his tenants from using the property in the manner in which they had become accustomed until the present defendant erected fences and put up signs in May, 2005." The defendant argues that because "the plaintiff bears the burden of proof . . . the court may not presume such noninterruption so as to make the plaintiff's case on this essential element of prescription. . . . [T]he error in this finding is that it, in effect, shifted the burden to Ippolito's successor to prove that Ippolito interrupted Cirino's adverse use." (Citation omitted.) "In a claim for a prescriptive easement, the burden is on the party claiming the right. . . . The essential elements are a use which is open, visible, continuous and uninterrupted for fifteen years and made under a claim of right." (Citations omitted.) *Swenson* v. *Dittner*, 183 Conn. 289, 294, 439 A.2d 334 (1981).

Cirino testified that following his 1977 confrontation with Ippolito, he made "no changes" in his use of the parcels, that Ippolito made no efforts to limit Cirino's use of the property and that he "never saw [Ippolito] again." There is no indication that the court, by the finding of fact at issue, improperly shifted the burden of proof, and the inference of continuous use was made permissibly.

took Ippolito outside. He told Ippolito, "don't you ever come in my store and do things like that again. Never, ever come here. . . . I'm parking the cars there, and that's the way it is. You can complain all you want, and that's the way it is." Cirino testified that he subsequently made "no changes" in his use of the parcels. He further testified that following the confrontation, Ippolito made no efforts to limit his use of the property and did not have any further conversations with Cirino regarding his use of parcels D1 and D2. In fact, Cirino testified that after that confrontation, he "never saw [Ippolito] again."

Maria Bellone-Anderson testified that in April, 1991, she opened a business located at 144 Main Street and remained at that location for sixteen and one-half years. She testified that she first became aware of the building at 144 Main Street in December, 1990. At that time, she noticed that cars, which she later learned belonged to tenants of 144 Main Street, were parked on parcel D1. She further testified that Cirino, her landlord, told her she could park behind the building. During Bellone-Anderson's sixteen and one-half year tenancy at 144 Main Street, she, her customers, her employees and other tenants of 144 Main Street would park in parcels D1 and D2. She testified that her use of these parcels for parking was not interrupted until May, 2005. At that time, she received a letter from Yacobacci indicating that she could no longer park her cars in the subject location.

Yacobacci testified that he started his business, Yacobacci Custom Carpentry, Inc., in 1989 and rented for his business a building in Derby at 5 First Street, from which location he could see 148-156 Main Street. In 1992, he moved the location of his business to Derby Avenue in Derby, but he returned to the vicinity of 5 First Street "quite often" because members of his family worked at that address. In 2002, he moved his business to Main Street, from which he could see 148-156 Main

Street. He testified that from 1989 to 2005 he had knowledge of cars parking on 148-156 Main Street. Before purchasing 148-156 Main Street, Yacobacci and Clark, as members of the defendant, inspected the property. Yacobacci noticed cars parked on parcels D1 and D2.

Michael Lariccia lived in an apartment building on 146 Main Street from 1992 to the time of trial. He testified that from 1992 until May, 2005, he would park his vehicles, which ranged in number from three to nine, on parcels D1 and D2 without restrictions. He did so with the permission of Cirino.

The defendant additionally argues that there is a "gap" from 1982 to 1991, during which time there is no evidence of continuous use by Cirino of the subject parcels. Yacobacci's testimony that from 1989 to 2005 he had knowledge of cars parking on 148-156 Main Street provided the court with more than a fifteen year time span. Moreover, Cirino testified that he and Ippolito had a confrontation in 1977, after which Cirino continued to use and to give permission to his tenants and their customers to use the subject parcels for parking. He testified that his tenants, with his permission, never stopped parking on the subject parcels at any time. Only after the defendant purchased 148-156 Main Street in 2005 did a dispute again arise regarding the use of D1 and D2 by the owner of 140-146 Main Street, which at that time was the plaintiff. The court's finding of continuous use by Cirino of the parcels D1 and D2 for the statutorily prescribed period of fifteen years was based on facts presented in evidence and reasonable inferences that could have been drawn from those facts. The evidence showed that Cirino began using parcel D1 in 1975 and parcel D2 in 1976 and that he continued to use those parcels until 2004, at which time he sold the property to the plaintiff. The court found that Cirino's use predated the plaintiff's use by approximately

twenty-nine years and fulfilled the fifteen year requirement. The court's finding of continuous use by Cirino for the statutory period of fifteen years is not clearly erroneous.

The judgment is affirmed.

In this opinion the other judges concurred.